| UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | | |
|---|---|---|
| ---------------------------------------------------------------X | | |
| PRIME 4 VENTURES, INC.,<br><br>        Plaintiff,<br><br> -against-<br><br>CREATIVE CONCEPTS OF AMERICA, INC.<br>and RED BULL OF NORTH AMERICA, INC.,<br><br>        Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.<br>07 CV 6912 (LAK) (MHD) |
| ---------------------------------------------------------------X | | |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RED BULL'S MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

PRELIMINARY STATEMENT .........................................................................1

PROCEDURAL BACKGROUND ......................................................................2

THE ALLEGATIONS OF PLAINTIFF'S
AMENDED COMPLAINT..................................................................................3

ARGUMENT .......................................................................................................5

   1. STANDARD OF REVIEW .........................................................................5

   2. PLAINTIFF'S SECOND CAUSE OF ACTION FAILS
      TO STATE A CLAIM. ................................................................................6

   3. PLAINTIFF'S  THIRD CAUSE OF ACTION ALSO FAILS
      TO STATE A CLAIM. .............................................................................10

       A. Plaintiff's Claims For Breach Of Contract and Tortious
          Interference With Contract Are Inconsistent On Their Face. .........................10

       B. Plaintiff Fails To Adequately Plead -- And Cannot Plead -- A Tortious
          Interference With Contractual Relations Claim ...............................................11

            1. Plaintiff cannot allege the existence of a valid contract. ......................11

            2. Plaintiff does not and cannot allege an intent
               to interfere with a valid contract. ..........................................................12

            3. Red Bull cannot tortiously interfere with a contract
               terminable at will. ................................................................................13

       C. Plaintiff Similarly Fails To Plead -- And Cannot Plead -- A Viable
          Claim For Interference With Prospective Business Relations. .........................13

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Abdelhamid v. Altria Group, Inc.*, --- F. Supp. 2d ---,
   2007 WL 2186275 (S.D.N.Y. 2007) ..............................................................5

*AIM Intern. Trading, L.L.C. v. Valcucine S.p.A.*,
   2003 WL 21203503 (S.D.N.Y. 2003) ..........................................................13

*Atler v. Bogoricin*, 1997 WL 691332 (S.D.N.Y. Nov. 6, 1997) ....................12

*ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...................5

*Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955 (2007) ............5

*Black Radio Network, Inc. v. Nynex Corp.*, 2000 WL 64874
   (S.D.N.Y. Jan. 24, 2000) ..............................................................................14

*Brady v. Calyon Sec. (USA)*, 406 F. Supp. 2d 307 (S.D.N.Y. 2005) ............11

*Curti v. Girocredit Bank*, 1994 WL 48835 (S.D.N.Y. Feb. 14, 1994) ............5

*G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762 (2d Cir. 1996),
   *cert. denied*, 516 U.S. 944, 116 S. Ct. 381 (1995) ...................................12

*Gruntal & Co., Inc. v. San Diego Bancorp*, 1996 WL 343079
   (S.D.N.Y. Jun. 21, 1996) ........................................................................12, 14

*Interboro Packaging Corp. v. G.P. Plastics Corp.*,
   2003 WL 21403807 (S.D.N.Y. Jun. 18, 2003) ...........................................14

*Joe Regueira, Inc. v. American Distilling Co., Inc.*,
   642 F.2d 826 (5th Cir. 1981) ......................................................................13

*Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209 (2d Cir. 2002) ......14

*Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397 (S.D.N.Y. 2002) ..............6

*Maung Ng We v. Merrill Lynch & Co., Inc.*, 2000 WL 1159835
   (S.D.N.Y. Aug. 15, 2000) .............................................................................9

*Mouawad National Company v. Lazare Kaplan International, Inc.*,
   476 F. Supp. 2d 414 (S.D.N.Y. 2007) ..........................................................9

*Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542 (S.D.N.Y. 1985) ...............12

*Rieger v. Dabrinsky*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...........................................7

*Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209 (S.D.N.Y. 2004) ..........................10

*Royal Indus. v. Kraft Foods*, 1998 WL 67671
　　(S.D.N.Y. Feb. 18, 1998), *aff'd*, 164 F.3d 619 (2d. Cir. 1998)......................................8, 9

*Siderius, Inc. v. M.V. Atlantic Forest*, 1987 WL 6428 (S.D.N.Y. Feb. 5, 1987) ..........................9

*World Wide Commc'ns, Inc. v. Rozar*, 1997 WL 795750
　　(S.D.N.Y. Dec. 30, 1997), *aff'd*, 65 Fed. Appx. 736 (2d Cir. 2003) .............................11

## STATE CASES

*Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.*, 15 Misc. 3d 776,
　　836 N.Y.S.2d 807 (Sup. Ct. New York Co. 2007) .......................................14-15

*Alvord & Swift v. Stewart M. Muller Constr. Co.*,
　　46 N.Y.2d 276, 413 N.Y.S.2d 309, 385 N.E.2d 1238 (1978) ...........................................12

*Bellino Schwartz Padob Advertising, Inc. v. Solaris Marketing Group, Inc.*,
　　222 A.D.2d 313, 635 N.Y.S.2d 587 (1st Dep't 1995) ........................................8

*Blume v. A & R Fuels, Inc.*, 32 A.D.3d 811, 821 N.Y.S.2d 132 (2d Dep't 2006) ........................11

*Florida-Georgia Chem. Co. v. Nat'l Labs.*, 153 So. 2d 752
　　(Fla. Dist. Ct. App. 1963) .........................................................13

*Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 490 N.Y.S.2d 735,
　　480 N.E.2d 349 (1985) ..............................................................15

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
　　50 N.Y.2d 183, 428 N.Y.S.2d 628, 406 N.E.2d 445 (1980) .............................13

*Gulf Cities Gas Corp. v. Tangelo Park Service Co.*,
　　253 So. 2d 744 (Fla. Dist. Ct. App. 1971) ...........................................13

*Jacobs v. Continuum Health Partners, Inc.*, 7 A.D.3d 312,
　　776 N.Y.S.2d 279 (1st Dep't 2004) ..................................................14

*Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546,
　　656 N.Y.S.2d 188, 678 N.E.2d 874 (1997) ...........................................7

*Widewaters Prop. Dev. Co., Inc. v. Katz*, 38 A.D.3d 1220,
　　836 N.Y.S.2d 746 (1st Dep't 2007) .................................................10

## STATUTES

28 U.S.C. § 1441(a) ...................................................................................................................2

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
PRIME 4 VENTURES, INC.,                              :

               Plaintiff,                        :

                                :    Civil Action No.
    -against-                                  :    07 CV 6912 (LAK) (MHD)

                                :
CREATIVE CONCEPTS OF AMERICA, INC.                   :
and RED BULL OF NORTH AMERICA, INC.,                  :

                           :
              Defendants.                          :
-------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## RED BULL'S MOTION TO DISMISS THE AMENDED COMPLAINT

       Defendant Red Bull of North America, Inc. ("Red Bull"), by and through its attorneys,

Sonnenschein Nath & Rosenthal LLP, respectfully submits this memorandum of law in support

of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint of plaintiff

Prime 4 Ventures, Inc. ("Plaintiff") as against Red Bull for failure to state any claim upon which

relief may be granted.

## PRELIMINARY STATEMENT

       Plaintiff's action against Red Bull is a misguided effort to attempt to recover for

wrongdoings allegedly perpetrated against Plaintiff by defendant Creative Concepts, Inc.

("Creative Concepts"). This is Plaintiff's second attempt to allege viable claims against Red

Bull, and its pleading remains woefully inadequate.[1]

---

[1] After Red Bull filed a motion to dismiss Plaintiff's original complaint, Plaintiff sought leave to
file the Amended Complaint. The Court granted Red Bull's motion to dismiss and Plaintiff's
request for leave to amend, as to which request Red Bull had consented. This is Red Bull's
second motion to dismiss, addressed to the equally deficient Amended Complaint.

As alleged by Plaintiff, Creative Concepts entered into an agreement with Red Bull to sell or market Red Bull vending machines to distributors in New York. Plaintiff claims it thereafter entered into an agreement with Creative Concepts, pursuant to which Creative Concepts allegedly agreed to give Plaintiff sole and exclusive rights to distribute Red Bull vending machines in the Borough of Manhattan. The gravamen of Plaintiff's action is that it was not given such exclusive rights, and that Creative Concepts thereby breached its contract, entitling Plaintiff to damages. In its Amended Complaint, Plaintiff claims Red Bull is responsible for that alleged breach under two theories: one based upon vague assertions of an apparent agency relationship and the second based upon vague assertions of interference with "business opportunities." Neither claim is colorable under governing law. As discussed below, Plaintiff has not pled any factual or legal basis that supports any claim that Red Bull is responsible for any alleged breach of contract by Creative Concepts.

## PROCEDURAL BACKGROUND

Plaintiff filed its original complaint in this action on or about June 8, 2007, in New York State Supreme Court, New York County. After Red Bull was served, the case was timely removed by Red Bull's petition to this Court on August 1, 2007, pursuant to 28 U.S.C. § 1441(a).

On September 12, 2007 Red Bull moved to dismiss the original complaint for failure to state a claim. Plaintiff cross-moved on October 13, 2007 for leave to amend its original complaint. Pursuant to stipulation, the parties agreed that Plaintiff could amend its complaint, and Plaintiff served the Amended Complaint dated October 18, 2007 that is the subject of this motion. On November 1, 2007, this Court formally granted Red Bull's motion to dismiss the original complaint and Plaintiff's cross-motion to file the Amended Complaint. Red Bull now seeks dismissal of the Amended Complaint in its entirety for failure to state any claim.

## THE ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff's allegations are contained in its Amended Complaint dated Oct. 18, 2007 ("Amd. Compl."), which is attached to the accompanying affidavit of Christine Lepera, sworn to November 16, 2007 ("Lepera Affidavit"), as Exhibit A.

Plaintiff alleges that during all relevant times Plaintiff was and is a corporation organized and existing under the laws of the State of New York, (Amd. Compl. at ¶1), Creative Concepts was and is a corporation that was duly organized under the laws of the State of Florida, (*Id.* at ¶2), and Red Bull was and is a corporation organized under the laws of the State of California. (*Id.* at ¶5.) Red Bull bottles, cans, markets and sells "Red Bull," a high energy drink, throughout the world. (*Id.* at ¶8.)

Plaintiff claims that Red Bull and Creative Concepts entered into an agreement in which Creative Concepts allegedly would have the right to assist Red Bull in marketing its energy drink through vending machines in New York. (*Id.* at ¶9.) Plaintiff claims that Creative Concepts and Plaintiff then entered into an agreement whereby Creative Concepts would sell "Red Bull" vending machines to Plaintiff and that Plaintiff would be the sole distributor of the vending machines in the Borough of Manhattan. (*Id.* at ¶10.) Plaintiff claims that it paid Creative Concepts $150,745.00 for fifty vending machines and 10,000 energy drinks pursuant to the agreement. (*Id.*) Plaintiff claims that, after accepting delivery of the fifty vending machines, Plaintiff discovered that third parties had contracted to sell "Red Bull" products in the Borough of Manhattan. (*Id.* at ¶12.)

Plaintiff's first claim -- allegedly pled only against Creative Concepts -- is that the "acts of defendants" constitute a "material breach of the agreement" between the Plaintiff and Creative

Concepts. (*Id.* at ¶13.)  Plaintiff claims that for this "breach," Creative Concepts only is liable to

Plaintiff in the sum of $500,000.00 on this first cause of action.[2]

Plaintiff's second claim is that Red Bull is liable for those damages and alleged breach of

contract by Creative Concepts under a theory of apparent agency.  (*Id.* at ¶16.)  Plaintiff alleges

that prior to entering into its contract with Creative Concepts, Plaintiff's secretary Jacob Tanur

("Tanur") spoke to Red Bull employees to discuss how to buy vending machines and gain

distribution rights for "Red Bull product." (*Id.* at ¶17.)  Plaintiff alleges that unnamed Red Bull

employees told Tanur to speak with a "Lawrence" whom Plaintiff was told was in charge of Red

Bull "vending." (*Id.* at ¶18.)  Plaintiff further alleges that at some unspecified time "Lawrence"

told Tanur that Red Bull was working with several third party companies, including Creative

Concepts, to broker the sales of the branded vending machines to the public. (*Id.* at ¶19.)

Plaintiff then asserts "Lawrence" told Tanur "towards the end of August 2006 to September

2006" that Creative Concepts had acquired the right to sell "Red Bull" vending machines and

distribution rights of "Red Bull" product from Red Bull, and that Plaintiff had to buy the

machines and product from Creative Concepts and no one else. (*Id.* at ¶20.)  Plaintiff then

conclusorily asserts that Red Bull, "as principal," placed Creative Concepts, "as the agent, in

such a position that Plaintiff reasonably believed that Creative Concepts was acting within its

authority, and that the plaintiff reasonably relied on Creative Concepts' acts and

representations." (*Id.* at ¶21.)  Plaintiff asserts that there was a "manifestation" by Red Bull to

---

[2] Plaintiff's filing of this action as against Creative Concepts is in breach of the very agreement
under which Plaintiff seeks to recover, as Plaintiff has violated the mandatory arbitration and
venue provisions contained in that agreement.  Plaintiff attached its agreement with Creative
Concepts for the first time in support of its cross-motion for leave to amend.  The contract at
issue precludes Plaintiff from asserting any claims related to disputes under it outside the
designated exclusive arbitration forum in Broward County, Florida.  While this claim is not (nor
can it be) pled against Red Bull, it should not have been filed in this Court.  A copy of the
agreement between Plaintiff and Creative Concepts ("Prime 4/Creative Agreement") is annexed
as Exhibit B to the Lepera Affidavit.

Plaintiff as to the "existence of Creative Concepts' apparent authority," and that Plaintiff "reasonably relied upon those representations to its detriment." (*Id.* at ¶¶22-23.)

Finally, for its third cause of action, Plaintiff alleges that Red Bull "knowingly" entered into an agreement with Creative Concepts to market Red Bull's products (*Id.* at ¶26), and conclusorily alleges (with no factual basis) that Red Bull "knew" that Creative Concepts was giving an exclusive distributorship to Plaintiff in the Borough of Manhattan. (*Id.* at ¶28.) Plaintiff alleges that Red Bull, by permitting other parties to sell its products in the Borough of Manhattan, "when it knew its agent Creative Concepts had entered into an agreement for exclusive distributorship of said product by plaintiff," caused the breach of the contract between Plaintiff and Creative Concepts, and that Plaintiff was injured as result of the breach. (*Id.* at ¶30.) Plaintiff asserts that these actions constituted tortious interference with Plaintiff's "business opportunity," a *prima facie* tort. (*Id.* at ¶29.)

## ARGUMENT

### 1. STANDARD OF REVIEW

In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint provides "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007)). The plaintiff must "amplify a claim with some factual allegations [] to render the claim plausible." *Abdelhamid v. Altria Group, Inc.*, --- F. Supp. 2d ---, 2007 WL 2186275, *2 (S.D.N.Y. Jul. 27, 2007). "Bald assertions and conclusions of law will not suffice." *Id.* In considering the sufficiency of the Amended Complaint, the Court "may consider documents incorporated into the complaint by reference and information that can be judicially noticed." *Curti v. Girocredit Bank*, 1994 WL 48835, *1 (S.D.N.Y. Feb. 14, 1994).

When "a plaintiff's allegations are contradicted by a document [that is integral to the Amended Complaint]," "[then] those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

### 2.    PLAINTIFF'S SECOND CAUSE OF ACTION FAILS TO STATE A CLAIM.

Plaintiff's second cause of action[3] contains wholly contradictory allegations that defeat its claim of alleged reliance upon statements of Red Bull in entering into its 2005 agreement with Creative Concepts.[4]

First, in paragraphs 17-19 of the Amended Complaint, Plaintiff alleges that its alleged employee Tanur spoke, at some unspecified time, to someone at Red Bull, named only "Lawrence," allegedly the "person in charge of vending for Red Bull," and that "Lawrence stated . . . that Red Bull was working with several third party companies, including Creative Concepts, to broker the sales of the branded vending machines to the public." This allegation in no way supports any reliance by Plaintiff that Creative Concepts would have apparent authority to bind Red Bull to an exclusive distributorship. In Paragraph 19, Plaintiff then alleges that "Lawrence" told Tanur in August or September of 2006 "that Creative Concepts had acquired the right to sell the Red Bull vending machines and distributions [sic] rights of Red Bull products from Red Bull and that plaintiff had to buy the machines and product from Creative Concepts and no one else." These two allegations are also contradictory, as in one instance Red Bull is allegedly stating that it is working with several third parties to sell "Red Bull" vending machines and in the other instance allegedly stating that Plaintiff could contract with no third party except for Creative

---

[3] While Plaintiff's vague allegations in its second claim are far from clear, Red Bull assumes for purposes of this motion that Plaintiff is attempting to assert a claim against Red Bull for breach of the Prime 4/Creative Agreement on the theory that Creative Concepts allegedly bound Red Bull to that Agreement by virtue of its alleged apparent agency authority.

[4] *See* Amd. Compl. at ¶10 ("That on or about November 22, 2005, the plaintiff and defendant Creative Concepts entered into a written agreement . . . .").

Concepts to acquire vending machines. Such contradictory pleadings are not credible. *Rieger v. Dabrinsky*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) ("[A] court need not feel constrained to accept as truth conflicting pleadings that . . . are contradicted . . . by statements in the complaint itself.").

Second, and fatal to Plaintiff's claim, is Plaintiff's admission that the alleged communication between Plaintiff and Red Bull pled in Paragraph 19 occurred *in August or September 2006*. That allegation cannot support any claim of "reliance" by Plaintiff in entering into the Prime 4/Creative Agreement -- *as Plaintiff admittedly entered into that agreement in November 22, 2005*. Thus, this sole factual predicate for Plaintiff's alleged claim that Red Bull vested Creative Concepts with apparent authority to enter into the Prime 4/Creative Agreement fails on the face of Plaintiff's own pleading.

A claim for contractual liability based on apparent authority requires pleading "*words or conduct of the principal*, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to *enter into a transaction.*" *Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 551, 656 N.Y.S.2d 188, 191, 678 N.E.2d 874, 887 (1997) (first emphasis in original; second added). An alleged communication which occurs *almost a year after* the transaction at issue has no bearing on the Plaintiff's state of mind in *entering into the transaction*. Further, Plaintiff's allegations that Red Bull allegedly told Plaintiff it had to buy vending machines and Red Bull products from Creative Concepts also does not demonstrate "words or actions" by Red Bull that Creative Concepts had authority to "enter into a transaction" that constituted an exclusive distributorship or franchise in Manhattan. *Id.* (New York Court of Appeals found no apparent agency existed as "Public Service Mutual made no representations regarding Lewitt's authority to procure on its behalf premium financing for its insureds. Rather, Public Service Mutual's representations were limited to Lewitt's power to write insurance

policies and accept premiums for them."). *See also Royal Indus. v. Kraft Foods*, 1998 WL
67671, *3 (S.D.N.Y. Feb. 18, 1998), *aff'd*, 164 F.3d 619 (2d Cir. 1998) (representations that
company sells its products through third parties is insufficient to state an agency relationship
with those third parties). Thus, Red Bull's alleged statements, even if accepted as true, could not
have reasonably led Plaintiff to believe that Red Bull had vested Creative Concepts with agency
authority to enter into an exclusive distributorship.

Third, the actual terms of the agreement between Red Bull and Creative Concepts, which
Plaintiff chooses to ignore while referencing it in vague terms, (Amd. Compl. at ¶9), reflects that
Creative Concepts' right to resell machines unequivocally did not give rise to any agency. (*See*
Exhibit C to the Lepera Affidavit (hereinafter the "Red Bull Agreement").) The Red Bull
Agreement clearly provides that Creative Concepts is *not* an agent of Red Bull. (Red Bull
Agreement at p. 3, ¶4.4.). *See Bellino Schwartz Padob Advertising, Inc. v. Solaris Marketing
Group, Inc.*, 222 A.D.2d 313, 313, 635 N.Y.S.2d 587, 588 (1st Dep't 1995) (upholding dismissal
of breach of contract claim against alleged principal when license agreement specifically
disclaimed existence of agency relationship). Section 1.2 of the Red Bull Agreement provides
that Creative Concepts had no legal right to grant, and in fact explicitly agreed *not* to grant,
exclusive territories to any prospective Red Bull distributors, and that Red Bull could sell its
machines and products "to third parties approved by Red Bull at any time." (Red Bull
Agreement at p. 1, ¶1.2.) Red Bull only gave Creative Concepts the non-exclusive right to resell
Red Bull vending machines. (*Id.*) Section 2.3 of the Agreement expressly forbid Creative
Concepts from representing to its customers that it could provide "exclusive territories, routes, or
locations." (*Id.* at p. 1, ¶2.3.)

Finally, the Red Bull Agreement provides solely for a resale of machines, which is a
traditional commercial transaction that does not create any agency relationship. *See, e.g.,*

*Mouawad National Company v. Lazare Kaplan International, Inc.*, 476 F. Supp. 2d 414, 424 (S.D.N.Y. 2007) (holding that purchaser of diamond was not acting as agent for seller when purchaser resold diamond to third party, since original seller did not directly benefit from the resale); *Royal*, 1998 WL 67671 at *3 (holding that subsidiary did not act as an agent for its parent company merely by purchasing parent company's products for resale to third party); *Siderius, Inc. v. M.V. Atlantic Forest*, 1987 WL 6428, *1 (S.D.N.Y. Feb. 5, 1987) (holding that trading company is not an agent of steel products manufacturer when company merely purchased manufacturer's products for resale). Indeed, "[t]he entire purpose of an agency relationship is to empower the agent to take actions on behalf of and for the benefit of the principal - not the agent." *Id.* at 423 (*citing Maung Ng We v. Merrill Lynch & Co., Inc.*, 2000 WL 1159835, *9 (S.D.N.Y. Aug. 15, 2000).

There is no allegation (nor could there be) that Red Bull ever communicated to Plaintiff that Red Bull had empowered Creative Concepts in any way to take actions on behalf of Red Bull (as it had not), granting exclusive distributorships or otherwise, or that Red Bull was benefiting from the contract between Plaintiff and Creative Concepts. Plaintiff's allegations on their face and in their entirety, even assuming the truth thereof, do not support any claim of liability of Red Bull on any theory of agency for Creative Concepts' alleged breach of contract. Plaintiff has not pled any facts that would permit it to pursue a claim of reasonable reliance on any statement of Red Bull indicating that it had vested Creative Concepts with agency authority to enter into an exclusive distributorship in Manhattan.

Plaintiff's second cause of action should be dismissed with prejudice.

3.    **PLAINTIFF'S THREE CAUSE OF ACTION ALSO**
      **FAILS TO STATE A CLAIM.**

The Amended Complaint alleges as a third cause of action "tortious interference with business opportunity." (Amd. Compl. at ¶29.) According to the skeletal allegations of the Amended Complaint, Creative Concepts allegedly granted Plaintiff sole distribution rights for "Red Bull" vending machines in the Borough of Manhattan, and Red Bull allegedly tortiously interfered with those alleged existing or prospective rights by permitting other distributors to sell in Manhattan. (*Id.* at ¶¶27-29.) The muddled allegations of the Amended Complaint purport to assert both a claim for tortious interference with existing contractual relations as well as a claim for tortious interference with prospective business relations. Regardless, under either tort theory, Plaintiff fails to plead a viable claim under New York law.

A.    **Plaintiff's Claims For Breach Of Contract and**
      **Tortious Interference With Contract Are Inconsistent On Their Face.**

If this third claim is construed as a claim for tortious interference with the Prime 4/ Creative Agreement, as Plaintiff also asserts that Red Bull is liable for breach of the Prime 4/Creative Agreement, the third claim cannot survive.[5] Under New York law, a party to an alleged contract cannot be held liable for committing tortious interference with its own contract. *Roselink Investors, L.L.C. v. Shenkman*, 386 F. Supp. 2d 209, 228 (S.D.N.Y. 2004). *See also Widewaters Prop. Dev. Co., Inc. v. Katz*, 38 A.D.3d 1220, 836 N.Y.S.2d 746 (1st Dep't 2007) (dismissing tortious interference with contract claim against party to the contract).

---

[5] As discussed *supra,* Plaintiff's second cause of action is presumably predicated upon the theory that Red Bull is a party to the Prime 4/Creative Agreement through a principal-agent relationship.

**B.    Plaintiff Also Fails to Adequately Plead -- And Cannot Plead --
    A Tortious Interference with Contractual Relations Claim.**

A complaint for tortious interference with contractual relations under New York law must

allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the

defendant's knowledge of that contract; (3) the defendant's intentional procurement of the third

party's breach of the contract without justification; and (3) an actual breach of the contract and

damages resulting from such breach." *Brady v. Calyon Sec. (USA)*, 406 F. Supp. 2d 307, 314

(S.D.N.Y. 2005).  A party pleading tortious interference cannot merely plead conclusory

language in asserting these elements: "the law requires some factual specificity in pleading

tortious interference." *World Wide Commc'ns, Inc. v. Rozar*, 1997 WL 795750, *7 (S.D.N.Y.

Dec. 30, 1997), *aff'd*, 65 Fed. Appx. 736 (2d Cir. 2003) (discussed *infra*).  The Amended

Complaint fails to meet this pleading standard, and thus must be dismissed.

1.    *Plaintiff cannot allege the existence of a valid contract.*

The lack of an existing enforceable contract defeats the first element of a claim for

tortious interference with contractual relations.  *Blume v. A & R Fuels, Inc.*, 32 A.D.3d 811, 812,

821 N.Y.S.2d 132, 133 (2d Dep't 2006).  Plaintiff does not even plead that it has a valid contract.

In any event, it cannot plead such an element, as any contract upon which Plaintiff relies for

alleged exclusive distributorship rights of Red Bull product is not enforceable.  As discussed

above, the Red Bull Agreement establishes that Creative Concepts had no legal right to grant,

and in fact explicitly agreed *not* to grant, exclusive territories to any prospective Red Bull

distributors, and makes it clear that Red Bull could sell its machines and products "to third

parties approved by Red Bull at any time." (*See* Red Bull Agreement at p. 1, ¶1.2.)  There could

be no valid contract for an exclusive distributorship as Red Bull only gave Creative Concepts the

non-exclusive right to resell Red Bull vending machines, and expressly forbade Creative

Concepts from representing to its customers that it could provide "exclusive territories, routes, or locations." (*Id.* at p.1, ¶2.3.)

> 2.    *Plaintiff does not and cannot allege an intent to interfere with a valid contract.*

Plaintiff does not plead that Red Bull acted with any intent to cause any breach of a valid contract between Plaintiff and Creative Concepts. Plaintiff simply alleges that Red Bull permitted the sale of "Red Bull" products by others when it allegedly was aware that Plaintiff and Creative Concepts had entered into an exclusive distributorship agreement. (Amd. Compl. at ¶30.) This allegation is woefully insufficient to state any tortious interference claim. *See G.K.A. Beverage Corp. v. Honickman*, 55 F.3d 762, 767-768 (2d Cir. 1996), *cert. denied*, 516 U.S. 944, 116 S. Ct. 381 (1995) (applying New York law) (dismissing tortious interference with contract claim when "allegations fail to show that appellees had the requisite intent with regard to procuring the breach of . . . contracts with appellants"); *Atler v. Bogoricin*, 1997 WL 691332, *12 (S.D.N.Y. Nov. 6, 1997) (dismissing tortious interference with contract claim against some of the defendants where the complaint failed to assert any factual allegations of interference); *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F. Supp. 542, 561 (S.D.N.Y. 1985) (dismissing tortious interference counts where complaint failed to allege why defendants procured breach of contract).

Importantly, even if there were any facts that Plaintiff could plead that Red Bull intended to interfere with a valid contract (and there are not), interference that is incidental to a lawful objective is not sufficient to survive a motion to dismiss. *Gruntal & Co., Inc. v. San Diego Bancorp*, 1996 WL 343079, *3 (S.D.N.Y. Jun. 21, 1996) (*citing Alvord & Swift v. Stewart M. Muller Constr. Co.*, 46 N.Y.2d 276, 281, 413 N.Y.S.2d 309, 312, 385 N.E.2d 1238, 1241 (1978)). Here, Red Bull had every right to sell its machines to whomever it wished, and that lawful objective cannot be disputed.

12

3.    *Red Bull cannot tortiously interfere with a contract terminable at will.*

It is axiomatic in New York that a party cannot be held liable for tortious interference

with a contract that is terminable at will.  *AIM Intern. Trading, L.L.C. v. Valcucine S.p.A.*, 2003

WL 21203503, *5 (S.D.N.Y. 2003) (*citing Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,

50 N.Y.2d 183, 192, 428 N.Y.S.2d 628, 634, 406 N.E.2d 445, 450 (1980)).  Under Florida law,

the Prime 4/Creative Concepts Agreement is at best that: a terminable-at-will contract.[6]  The

contract between Plaintiff and Creative Concepts that purports to provide an exclusive

distributorship contains absolutely no explicit reference, nor even a hint, as to the intended

duration of the purported exclusive right.  In Florida, contracts that are "wholly lacking in any

reference to the duration of the contract" are considerate "indefinite" and are terminable at will.

*See, e.g., Joe Regueira, Inc. v. American Distilling Co., Inc.*, 642 F.2d 826, 829 (5th Cir. 1981);

*Gulf Cities Gas Corp. v. Tangelo Park Service Co.*, 253 So. 2d 744, 748 (Fla. Dist. Ct. App.

1971) (contract for sale of gas was silent as to duration of contract and was thus terminable at

will); *Florida-Georgia Chem. Co. v. Nat'l Labs.*, 153 So. 2d 752, 754 (Fla. Dist. Ct. App. 1963)

(oral exclusive sales agency contract was silent on duration and was terminable at will).  As

such, Red Bull cannot be held liable for any tortious interference with that contract under New

York law.

**C.    Plaintiff Similarly Fails to Plead -- And Cannot Plead -- a
    Viable Claim For Interference With Prospective Business Relations.**

Plaintiff's tortious interference claim for prospective business opportunity to sell Red

Bull machines in the Borough of Manhattan exclusively is fatally deficient, for the above stated

reasons, and more.  To state a claim for tortious interference with business relations under New

York law, a plaintiff must plead:  "(1) plaintiff had a business relation with a third party; (2)

---

[6] In addition to the mandatory arbitration and venue provisions, the Prime 4/Creative Agreement is governed by the laws of the State of Florida.  (*See* Prime 4/Creative Agreement at ¶10.)

defendant interfered with those business relations; (3) defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) injury to the relationship." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002). The Amended Complaint fails to allege these requisite elements and it is clear that Plaintiff cannot plead them.

This claim requires "direct interference with a third party, that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." *Black Radio Network, Inc. v. Nynex Corp.*, 2000 WL 64874, *4 (S.D.N.Y. Jan. 24, 2000). The Amended Complaint only alleges that Red Bull (rightfully) permitted the sale of its product by other distributors. (Amd. Compl. at ¶¶29-30.) Plaintiff has not pled and cannot plead any such acts of interference as to any "business opportunity" between Creative Concepts and Plaintiff. *See Interboro Packaging Corp. v. G.P. Plastics Corp.*, 2003 WL 21403807, *1 (S.D.N.Y. Jun. 18, 2003) (dismissing claim for tortious interference where plaintiff only alleged that defendant damaged business by placing plaintiff on credit hold, not by actually interfering in business relationships between plaintiff and third parties).

There is no question Plaintiff has not pled, and will not be able to allege or prove, that Red Bull acted for a wrongful purpose or used dishonest, unfair, or improper means in interfering with Plaintiff's alleged business relationship with Creative Concepts. Plaintiff can never establish that Red Bull -- by entering into other distributor relationships -- "disrupted" the alleged exclusive arrangement "either . . . for the sole purpose of harming plaintiff, or that such conduct was wrongful or improper independent of the interference allegedly caused thereby." *Jacobs v. Continuum Health Partners, Inc.*, 7 A.D.3d 312, 313, 776 N.Y.S.2d 279, 279 (1st Dep't 2004). *See also Gruntal*, 1996 WL 343079 at *3 (dismissing claim for tortious interference with business relations for failure to allege intent to interfere); *Advanced Global*

14

*Tech. LLC v. Sirius Satellite Radio, Inc.*, 15 Misc. 3d 776, 836 N.Y.S.2d 807 (Sup. Ct. New York Co. 2007) (dismissing claim for tortious interference with business relations where complaint stated only conclusory allegations of wrongful purpose or improper means).[7]

In sum, Plaintiff's conclusory and irrefutably unsupportable allegations do not state a claim for tortious interference with prospective business relations. Ultimately, Plaintiff will not be able to proffer any allegation remotely close to satisfying this legal standard, as Red Bull had every right to enter into other distributor relationships. Accordingly, Plaintiff's third cause of action should be dismissed with prejudice.

Dated: New York, New York
November 16, 2007

SONNENSCHEIN NATH & ROSENTHAL LLP

By: *Christine Lepera*

Christine Lepera
Zhubin Parang
1221 Avenue of the Americas
New York, New York 10020-1089
(212) 768-6700

*Attorneys for Red Bull of North America, Inc.*

---

[7] Certainly, Red Bull, by allegedly selling to other distributors, in no way committed "a *prima facie* tort." (Amd. Compl. at ¶29.) Plaintiff throws in the term "prima facie tort" at the end of the Amended Complaint. To the extent that Plaintiff is claiming it has stated such a claim, such assertion is wholly without merit as the Plaintiff has not pled and cannot plead the elements of a prima facie tort, namely: (1) the intentional infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful. *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142-143, 490 N.Y.S.2d 735, 745, 480 N.E.2d 349, 355 (1985).