| UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | |
|---|---|
| ------------------------------------------------------------X  PRIME 4 VENTURES, INC., <br><br>                            Plaintiff, <br><br>        -against- <br><br> CREATIVE CONCEPTS OF AMERICA, INC. and RED BULL OF NORTH AMERICA, INC., <br><br>                            Defendants. <br> ------------------------------------------------------------X | Civil Action No. <br> 07 CV 6912 (LAK) (MHD) |

**DEFENDANT RED BULL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PRIME 4 VENTURES, INC.,           :
                                  :
            Plaintiff,          :
                                  :
    -against-                    :   Civil Action No.
                                  :   07 CV 6912 (LAK) (MHD)
                                  :
CREATIVE CONCEPTS OF AMERICA, INC. :
and RED BULL OF NORTH AMERICA, INC., :
                                  :
            Defendants.         :
------------------------------------------------------------X

**DEFENDANT RED BULL'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

**PRELIMINARY STATEMENT**

Defendant Red Bull North America, Inc. ("Red Bull"),[1] by and through its attorneys, Sonnenschein Nath & Rosenthal LLP, respectfully submits this reply memorandum of law in further support of its motion, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the Amended Complaint of plaintiff Prime 4 Ventures, Inc. ("Plaintiff") in its entirety as against Red Bull for failure to state any claim upon which relief may be granted.

Plaintiff's opposition to Red Bull's motion offers no analysis or argument remotely sufficient to avoid dismissal of its claims. Rather, Plaintiff regurgitates the same woefully

---

[1] The proper name of Defendant is Red Bull North America, Inc., not Red Bull of North America, Inc. as reflected in the caption.

inadequate allegations of its Amended Complaint, and fails to articulate any viable legal or factual basis that could sustain either of its two claims against Red Bull.[2]

Ignoring the legal authorities raised by Red Bull, Plaintiff largely concedes Red Bull's arguments, and provides nothing more than a mechanical recitation of inapposite cases standing for generalized legal concepts which lend no support to Plaintiff's claims here. Indeed, Plaintiff's opposition *supports* the grant of this motion, as it confirms Plaintiff can plead no colorable claim against Red Bull under any of its confused theories. Whether framed as a claim for alleged contractual liability, tortious interference with contract, *prima facie* tort, or otherwise, Plaintiff's complaint against Red Bull cannot withstand scrutiny. There is no basis, and none is alleged, which could hold Red Bull accountable to Plaintiff in any way for the alleged breach by Creative Concepts of the Prime 4/Creative Agreement.[3]

---

[2] As discussed below and in Red Bull's opening memorandum, Plaintiff has asserted two claims against Red Bull. Plaintiff's description of those two claims is vague, contradictory, and confusing, as well as a moving target. In its Memorandum of Law in Opposition to Defendant's Motion to Dismiss (hereinafter "Opposition"), Plaintiff characterizes its second claim as one "grounded in tort for misrepresentation" (Opposition, at p. 3), or as one grounded in agency to bind Red Bull to Defendant Creative Concepts' contract. (*Id.* at p. 7.) Similarly, Plaintiff's third claim is characterized as a "prima facie tort" for interference with "business opportunity" (*Id.* at p. 4) or for "tortious interference with a contract." (*Id.* at p. 5.) In all events, none of Plaintiff's permutations of its claims, including as alleged in the Amended Complaint, is sufficient to survive this motion.

[3] Capitalized or defined terms as used herein have the meaning ascribed to them in Red Bull's opening Memorandum of Law, dated November 16, 2007, to which this Court is respectfully referred.

2

Accordingly, at this juncture, because Plaintiff has failed -- despite two opportunities -- to plead viable claims, and has shown that it is unable to cure its pleading deficiencies, Plaintiff's two claims against Red Bull should be dismissed with prejudice.[4]

## ARGUMENT

### 1. PLAINTIFF CANNOT SHOW THAT ITS SECOND CLAIM SHOULD SURVIVE THIS MOTION UNDER ANY LEGAL THEORY

In its opening Memorandum of Law (hereinafter "Motion" or "Mem."), Red Bull demonstrated that Plaintiff's second claim in the Amended Complaint cannot be sustained, as it contains no factual allegations sufficient to support a claim of liability on the part of Red Bull under an apparent agency theory, or otherwise,[5] related to the Prime 4/Creative Agreement.

---

[4] As Plaintiff's first claim in the Amended Complaint concededly is not posed against Red Bull, Red Bull takes no position as to whether it is subject to dismissal, but notes that Plaintiff continues to ignore the mandatory arbitration clause in the very agreement it seeks to enforce, despite spending nearly two pages of its 11-page brief describing the adequacy of its breach of contract claim against Creative Concepts.

[5] As noted above, Plaintiff alternatively, and inconsistently, has argued that its second claim sounds in tort for "misrepresentation." (Opposition, at p. 5.) Plaintiff's Amended Complaint clearly contains no such allegation, and Plaintiff has not pled any such claim. A claim for fraudulent misrepresentation requires a plaintiff to plead that: (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance, along with facts that satisfy the particularity requirements of Fed. R. Civ. P. 9(b). *Henneberry v. Sumitomo Corp. of America*, 2007 WL 2068346, *19 (S.D.N.Y. Jul. 12, 2007) (denying claim for fraudulent misrepresentation). A claim for negligent misrepresentation requires that a plaintiff plead that: (1) the defendant had a duty, as a result of a special relationship, to give correct information, (2) the defendant made a false representation that he or she should have known was incorrect, (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose, (4) the plaintiff intended to rely and act upon it, and (5) the plaintiff reasonably relied on it to his or her detriment. *Bangkok Crafts Corp. v. Capitolo Di San Pietro in Vaticano*, 2007 WL 1687044, *6-7 (S.D.N.Y. Jun. 11, 2006) (denying claim for negligent misrepresentation). Plaintiff could not plead either claim here, by any stretch, based upon the scant allegations made against Red Bull.

3

By its Amended Complaint, in purported "amplification" of its second claim, Plaintiff proffered only one vague and untimely communication as allegedly having transpired between it and Red Bull as the sole factual predicate for its claim.[6] By its motion, Red Bull demonstrated that this allegation simply did not save Plaintiff's claim, by virtue of the following points:

- A claim for contractual liability based on apparent authority requires pleading words or conduct of the principal, communicated to a third party, that give rise to the appearance and belief that the agent possesses authority to enter into a transaction. (Mem., at pp. 6-7.)

- The alleged communication in Paragraph 20 of the Amended Complaint could not give rise to the appearance and belief by Plaintiff that Creative Concepts had authority to offer it an exclusive distributorship when Plaintiff entered into the subject contract because, by Plaintiff's own allegation, the alleged communication with "Lawrence" occurred in August or September 2006, almost a year *after* Plaintiff entered into the contract with Creative Concepts on November 22, 2005. (*Id.* at p. 7.)[7]

- Further, even accepted as true, on its face, a communication from "Lawrence" that Plaintiff had to buy vending machines and Red Bull products from Creative Concepts does not demonstrate "words or conduct" by Red Bull that Creative Concepts had authority to offer Plaintiff an exclusive distributorship in Manhattan. (*Id.* at pp. 7-8.)[8]

---

[6] Plaintiff alleged that someone named "Lawrence" told Plaintiff's employee "that Creative Concepts had acquired the right to sell the Red Bull vending machines and distributions [sic] rights of Red Bull products from Red Bull and that plaintiff had to buy the machines and product from Creative Concepts and no one else." (Amd. Compl., ¶ 20.)

[7] Plaintiff has conceded that the Prime 4/Creative Agreement (attached as Exhibit B to the Lepera Affidavit, sworn to November 16, 2007) forms part of its "amplified" pleading. As such, Plaintiff's alleged reliance upon a purported verbal communication by "Lawrence" is not only belied by the time periods in its own allegations but also contradicted and prohibited by Plaintiff's express warranty and representation in the Prime 4/Creative Agreement that it "is ***not*** relying upon any verbal or written representation whatsoever, except as expressly set forth in this agreement." *Hazara Enters., Inc. v. Motiva Enters., LLC*, 126 F. Supp. 2d 1365, 1373 (S.D. Fla. 2000) ("Under Florida law, the parol evidence rule precludes admission of prior or contemporaneous oral statements which vary or contradict the terms of a written contract which is clear, unambiguous and fully integrated.").

[8] In the Preliminary Statement of the Opposition, at page 3, Plaintiff misstates the content of its own allegation of Paragraph 20, incorrectly claiming it has alleged that Red Bull made "its statement to plaintiff that Creative Concepts was authorized to sell distribution rights with exclusive territories." There is no such allegation in Paragraph 20 or elsewhere in the Amended Complaint.

4

- Finally, the alleged communication did not state or imply that Red Bull had empowered Creative Concepts in any way to take action in its name or that Red Bull was benefiting from the contract between Plaintiff and Creative Concepts. As alleged, the communication was that Red Bull had sold machines and products to Creative Concepts, a traditional commercial transaction under cited authorities, and could not reasonably have been construed to imply an agency relationship between Red Bull and Creative Concepts. (*Id.* at pp. 8-9.)[9]

Plaintiff does not rebut or even address these arguments, and thus they are deemed to have been conceded. *Dorchester Investors v. Peak Trends Trust*, 2003 WL 223466, *2 (S.D.N.Y. Feb. 3, 2003) (arguments not addressed in opposition to a motion to dismiss are deemed conceded). Plaintiff also does not demonstrate how any of the legal authorities it cites support its contention that its factual allegations are sufficient. (Opposition, at pp. 7-8.) They do not.[10] Instead, relying solely upon the bald allegations discussed above, and with no other legal

---

[9] The Prime 4/Creative Agreement also contains the term that "Purchaser acknowledges that this is neither a franchise offering nor a security offering and involves only the purchase of products," and also contains no warranty or provides no representation by Creative Concepts that it is acting or has authority to act for Red Bull thereunder. There is no support in that document whatsoever for Plaintiff's contention that the Prime 4/Creative Agreement provides "that Defendant Creative Concepts would be given the right to assist Defendant Red Bull in marketing its product through vending machines in the State of New York." (Opposition at pp. 5-6.)

[10] Plaintiff's cases do not remotely support the viability of Plaintiff's second claim, nor do they challenge any of the arguments or authorities raised by Red Bull. *See, e.g., Blackman v. Hustler Magazine, Inc.*, 620 F. Supp. 1501, 1510 (D.D.C. 1984) (applying Nevada state law in determining that photograph broker did not have apparent authority to bind photograph owner into contract when owner merely asked broker to find willing buyer for pictures); *Bank v. Rebold*, 69 A.D.2d 481, 493-494, 419 N.Y.S.2d 135, 142 (2d Dept. 1979) (doctrine of apparent agency authority could not be invoked against car rental company for injuries occurred in automobile accident when injuries were not caused by alleged agent); *Parlato v. Equitable Life Assur. Soc. of U.S.*, 299 A.D.2d 108, 113, 749 N.Y.S.2d 216, 220-221 (1st Dept. 2002) (investment company liable under apparent agency doctrine for fraud committed by former employee when company failed to notify plaintiff that it had terminated the employee); *Wen Kroy Realty Co. v. Pub. Nat. Bank & Trust Co. of New York*, 260 N.Y. 84, 92-93, 183 N.E. 73, 75-76 (N.Y. 1932) (bank can not solely rely on corporation president's apparent authority to endorse checks on behalf of the corporation); *Ford v. Unity Hosp.*, 32 N.Y.2d 464, 472, 346 N.Y.S.2d 238, 244, 299 N.E.2d 659, 664 (N.Y. 1973) (medical practice group could not invoke

5

or factual support for its proposition, Plaintiff leaps to the unsupported contention that "Red Bull's acts and representations manifested the existence of defendant Creative Concept's apparent authority." (*Id.* at p. 8.) This conclusory statement is no substitute for factual allegations, and does not provide any basis to defeat this motion.

2. **PLAINTIFF SIMILARLY CANNOT SHOW THAT ITS THIRD CLAIM FOR RELIEF SHOULD SURVIVE THIS MOTION**

As previously noted, Plaintiff's third cause of action is as equally vague, contradictory, and unsupportable as its second claim.

Plaintiff claims, on the one hand, that it has asserted a claim for tortious interference with contract and, on the other hand, a claim for *prima facie* tort or tortious interference with prospective business relations. *Compare* Opposition, at p. 5 (Plaintiff's third claim is for "tortious interference with a contract") *with* Opposition, at p. 8 ("plaintiff sufficiently plead [sic] a cause of action for tortious interference with a business opportunity"). As demonstrated herein and in Red Bull's Motion, in all events, the claim fails.

    A. **Plaintiff has failed to demonstrate that it has pled a viable claim for tortious interference with contract against Red Bull.**

In its Motion, Red Bull made several arguments that the Amended Complaint fails to allege tortious interference with contract, as follows:

- A claim for tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party. Plaintiff has not and cannot plead that its contract with Creative Concepts for exclusive distribution of "Red Bull" vending machines is valid, as the agreement between Red Bull and Creative Concepts

---

doctrine of apparent agency authority against medical insurer for indemnification against malpractice suit when insurer made no representations indicating a principle-agent relationship).

expressly establishes that Creative Concepts had no legal right to grant exclusive territories on behalf of Red Bull. (*Id.* at pp. 10-11.)

- A claim for tortious interference with contract requires that the defendant acted with intent to cause the breach of the contract between the plaintiff and a third party. Plaintiff only alleges that Red Bull permitted the sale of "Red Bull" products by others when Red Bull allegedly was aware that Plaintiff and Creative Concepts had entered into an exclusive distributorship agreement. (*Id.* at p. 12.)[11]

- Moreover, even if there *were* any facts that Plaintiff could plead that Red Bull intended to interfere with a valid contract (and there are not), interference that is incidental to a lawful objective is not sufficient to survive a motion to dismiss. Red Bull had every legal right to enter into contracts with whomever it wished, as demonstrated by Paragraph 1.2 of the Red Bull Agreement. (*Id.* at p. 8.)

- The rights relied upon by Plaintiff in its alleged agreement with Creative Concepts are terminable at will under Florida law (the law under which the contract is governed). Similarly, under New York law, a party cannot be held liable for tortious interference with a contract that is terminable at will. (*Id.* at p. 13.)

Plaintiff again concedes these arguments by its failure to even attempt to rebut their application here. *Dorchester,* 2003 WL 223466 at *2. Plaintiff does not offer, and cannot make, any new factual allegations -- as there are none -- that could cure any of the deficiencies highlighted above. Accordingly, to the extent that Plaintiff is attempting to state a claim for interference with contract, it should be rejected as legally deficient and dismissed with prejudice.

> **B.    Plaintiff has failed to demonstrate that it has pled a viable claim for tortious interference with prospective business relations against Red Bull.**

Again, Red Bull asserted several arguments in support of its motion to demonstrate that Plaintiff has failed to state any viable claim against Red Bull for tortious interference with prospective business relations, or *prima facie* tort, as follows:

---

[11] Plaintiff's contention that "Red Bull knew that Creative Concepts was giving an exclusive distributorship to the plaintiff in the Borough of Manhattan," (Opposition, at p. 5), has no factual predicate in the Amended Complaint. It certainly is not supported by the allegations of Paragraph 20 cited above regarding the single "communication" Plaintiff allegedly had with "Lawrence."

7

- When stating a claim for tortious interference with prospective business relations, a plaintiff must allege "direct interference with a third party, that is, the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff." (Mem., at p. 14.)

- Here the Amended Complaint fails to allege that Red Bull engaged in *any* activities directed toward Creative Concepts, much less any activities directed toward convincing Creative Concepts not to enter into a contract with Plaintiff. (*Id.*)

- A claim for tortious interference requires that the plaintiff allege that the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means when interfering with the plaintiff's business relations. (*Id.*)

- Plaintiff does not and cannot plead that Red Bull acted for a wrongful purpose or used dishonest, unfair, or improper means in allegedly interfering with Plaintiff's business relationship with Creative Concepts. Plaintiff merely alleges that Red Bull disrupted the relationship by entering into other distributor relationships, which it had legitimate business motives and the legal right to do. (*Id.*)

- Plaintiff does not and cannot plead the elements of a *prima facie* tort. (*Id.* at 15, n.7.)

Plaintiff again chooses to default to concession on each of these points, making no counter argument whatsoever. *Dorchester,* 2003 WL 223466 at *2. While acknowledging, *albeit* in a vacuum, the legal standard compelling a plaintiff to plead a defendant's "wrongful, improper, illegal, or independently tortious means to defeat another's future business opportunity," (Opposition, at p. 9), Plaintiff entirely fails to demonstrate that it has met or could ever meet that stringent factual pleading standard. Obviously, Plaintiff's restatement of general principles of tort law without any discussion as to how that law applies to the current pleading is wholly unavailing.[12]

---

[12] Plaintiff cites two inapposite cases that provide no support for Plaintiff's contention that its third claim is sufficiently pled. *See, e.g., Foster v. Churchill,* 87 N.Y.2d 744, 750-751, 642 N.Y.S.2d 583, 587, 665 N.E.2d 153, 157 (1996) (economic justification was complete defense against claim of tortious interference with employment contract); *see also NBT Bancorp, Inc. v. Fleet/Norstar Fin. Group, Inc.,* 87 N.Y.2d 614, 625, 641 N.Y.S.2d 581, 587, 664 N.E.2d 492, 498 (1996) (corporate bidder did not commit tortious interference with prospective business relations against rival bidder for sending letter to board of target corporation demanding opportunity to revise submitted bid).

The law is clear: it requires facts to support such a tort claim, and not the type of vague and conclusory assertions advanced by Plaintiff in both its Amended Complaint and its Opposition. *See, e.g., Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.*, 15 Misc. 3d 776, 782, 836 N.Y.S.2d 807, 812 (Sup. Ct. New York Co. 2007) (dismissing claim for tortious interference with business relations where complaint stated only conclusory allegations of wrongful purpose or improper means). Nowhere in either the Amended Complaint or the Opposition are any allegations asserted that could conceivably rise to the level of constituting a "wrongful purpose" or "dishonest, unfair, or improper means" on the part of Red Bull. Red Bull's rightful business activity does not *remotely* constitute "dishonest, unfair, or improper means," or activities undertaken with a "wrongful purpose."

Plaintiff's efforts to concoct any claim that it can against Red Bull -- regardless of the fact that it has no predicate for any claim -- should not be countenanced. Plaintiff's Opposition makes it quite apparent that Plaintiff is grasping at straws and its Amended Complaint against Red Bull should be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, and those set forth in all of the papers submitted in support of its motion to dismiss, Red Bull respectfully requests that this Court dismiss Plaintiff's Amended Complaint as against it in its entirety, with prejudice.

Dated: New York, New York
        December 21, 2007

                          SONNENSCHEIN NATH & ROSENTHAL LLP

                          By: /s/ Christine Lepera
                              Christine Lepera
                              Zhubin Parang
                              1221 Avenue of the Americas
                              New York, New York  10020-1089
                              (212) 768-6700

                              *Attorneys for Red Bull North America, Inc.*