UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PRIME 4 VENTURES, INC.,

              Plaintiff,

      -against-                                    07 Civ. 6912 (LAK)

CREATIVE CONCEPTS OF AMERICA, INC., et ano.,

              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/3/08

## ORDER

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff here sues defendant Creative Concepts of America, Inc. ("CCA") for breach of contract and defendant Red Bull of North America, Inc. ("Red Bull") for (1) fraud or misrepresentation by CCA on the theory that CCA acted with apparent authority conferred by Red Bull, and (2) tortious interference with plaintiff's business relationship with CCA. CCA has not appeared in the action and, so far as the record discloses, has not been served. Red Bull moves to dismiss the amended complaint as against it pursuant to Fed. R. Civ. P. 12(b)(6).

*Facts*

        As this is a motion to dismiss, the Court assumes the truth of the facts set forth in the complaint together with the two contracts effectively incorporated therein by reference.

        Plaintiff, before entering into any contract with CCA, spoke to unnamed employees of Red Bull about buying vending machines and drink and was referred to an employee named "Lawrence." Lawrence allegedly told plaintiff that Red Bull was working with several third party companies, including CCA, "to broker the sales of the branded vending machines to the public."

        Subsequently, on September 15, 2005, Red Bull entered into a contract with CCA pursuant to which it agreed to permit its agents to sell to CCA, on a non-exclusive basis, vending machines and Red Bull product. CCA expressly covenanted that it would not represent to its customers that it had exclusive rights to sell Red Bull machines. The agreement further provided that nothing therein would make either party the agent of the other.

On or about November 22, 2005, plaintiff entered into a written agreement with CCA to purchase 50 Red Bull soft drink vending machines and 10,000 cans of Red Bull drink for $150,745.[1] The rider provided in substance that plaintiff would "have the exclusive right to own and operate officially branded 'Red Bull' vending machines within the borough of Manhattan" and that there would be no more than fixed numbers of owner/operators in other boroughs and in Nassau and Suffolk Counties. The purported grant of exclusivity as to Manhattan allegedly was a material inducement to plaintiff's agreement to the deal. Nevertheless, plaintiff claims that it soon discovered "that there were other parties that defendants, either acting alone or in concert, had contracted with to sell the RED BULL product in the Borough of Manhattan."

The first claim for relief is against CCA for breach of contract.

The second is against Red Bull. In addition to the facts related above, the amended complaint alleges that "towards the end of August 2006 to early September 2006" – and thus almost a year after plaintiff signed the contract with CCA – plaintiff again spoke to Lawrence, who allegedly told it that CCA had acquired the right to sell the vending machines and distribution rights and that plaintiff had to buy the machines and product from CCA.

Finally, the last claim for relief asserts that Red Bull knew that CCA was granting a distributorship to plaintiff that was exclusive as to Manhattan but tortiously interfered with that agreement by selling its products to others notwithstanding the exclusivity representation of its alleged agent, CCA.

*Discussion*

As CCA has neither been served nor appeared, there is no reason to address the first claim for relief on this motion.

*The Second Claim for Relief*

The theory of the second claim for relief is obscure. But plaintiff's memorandum in opposition to the motion makes clear that it seeks relief on the theory that CCA acted with apparent authority conferred by Red Bull "and that plaintiff reasonably relied on [CCA's] acts and representations." Thus, two possible bases for relief must be considered: that Red Bull is liable for CCA's (1) breach of the exclusivity provision of plaintiff's contract with CCA, and (2) misrepresentation as to the exclusive nature of its Manhattan relationship with plaintiff. Neither, however, is sufficient. Indeed, while there are other problems with the claim, both founder on one

---

[1] The agreement provided also that CCA would provide plaintiff with cans of Red Bull drink at a price not to exceed $1.25.

common point.

       The pivotal communication between plaintiff and Red Bull – that in which "Lawrence" allegedly told plaintiff that CCA had acquired the right to sell the vending machines and distribution rights and that plaintiff had to buy the machines and product from CCA – occurred almost a year after plaintiff sign its contract with CCA. The only alleged communication prior to the signing of that contract was the statement that Red Bull was working with several third party companies, including CCA, "to broker the sales of the branded vending machines to the public." Indeed, plaintiff does not even allege that Red Bull then told it that it had reached any understanding with CCA. In consequence, no reasonable trier of fact could find that the statement, even if made, was sufficient to confer apparent authority on CCA to enter into an exclusive distributorship with plaintiff or to make representations to plaintiff about the Red Bull business. *See, e.g., Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 551 (1997) (putative principal must have said words or engaged in conduct that gave appearance that alleged agent had authority to act in the manner relied upon by plaintiff).

*Third Claim for Relief*

       The third claim for relief explicitly presupposes that CCA acted as Red Bull's agent in granting exclusive rights to plaintiff for Manhattan and goes on to claim that Red Bull tortiously caused the breach of that contract by allowing others to sell in Manhattan. The problems with this claim are numerous, including among others the following:

- Red Bull clearly did not grant actual authority to CCA, as its contract expressly negated any such relationship. For the reasons set out above, plaintiff has not alleged facts from which apparent authority reasonably could be inferred. The fundamental premise of the claim therefore is baseless.

- Even if that were not so, plaintiff's contract with CCA is hopelessly vague as to the meaning of the exclusivity provision, a matter that is fatal regardless of how the uncertainty is resolved. If the contract were construed as a limitation only on CCA's right to sell to others in Manhattan, then Red Bull's action in permitting entities other than CCA to sell in Manhattan neither breached nor interfered with plaintiff's rights under its contract with CCA. If, on the other hand, that contract were construed as purporting to limit the rights of Red Bull and others, it was not valid in light of the express non-exclusivity provision of the CCA-Red Bull agreement. There can be no liability for tortious interference with an invalid contract. *See, e.g., Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120 (1956).

4

*Conclusion*

      Plaintiff, even on its own telling of the tale, is responsible for its own predicament. It is difficult to imagine how it entered into a $150,000 transaction in reliance on an assurance that it would have exclusive rights to Manhattan without either (a) spelling out what that meant – i.e., whether it meant that CCA alone would be precluded to selling to others in Manhattan or instead that CCA, Red Bull and anyone else in the chain of distribution would be so limited, or (b) engaging in basic due diligence to ensure that it got what it thought it was paying for. More important, for present purposes, is that this amended complaint alleges no facts that could possibly give rise to liability on the part of Red Bull.

      Red Bull's motion to dismiss the amended complaint as to it [DI 22] is granted in all respects. As more than 120 days have passed since the commencement of the action and no proof of service on CCA has been filed, the action is dismissed as to CCA without prejudice as to that defendant pursuant to Fed. R. Civ. P. 4(m).[2] The Clerk shall enter final judgment and close the case.

SO ORDERED.

Dated:     March 3, 2008

                                              Lewis A. Kaplan
                                           United States District Judge

---

[2] The notice of removal is deemed amended to allege that CCA never was served, therefore making removal appropriate. *See* 28 U.S.C. § 1653.