UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X  Civil Action No.
PRIME 4 VENTURES, INC.                                              07 CV 6912 (LAK) (MHD)

                            Plaintiff,
        -against-                                                    **AFFIDAVIT OF**
                                                                  **IRAKLY TANURISHVILI**

CREATIVE CONCEPTS OF AMERICA, INC.
and RED BULL OF NORTH AMERICA, INC.
                            Defendants.
------------------------------------------------------------------X
STATE OF NEW YORK   )
COUNTY OF NEW YORK)SS.:

    IRAKLY TANURISHVILI, being duly sworn, deposes and says:

1.    I am the president of the plaintiff corporation Prime 4 Ventures, Inc.

2.    Prime 4 Ventures, Inc. is in the business of beverage distribution. In 2005, Prime 4 Ventures, Inc. sought to market the Red Bull Energy Drink. We contacted defendant Red Bull North America (hereinafter referred to as Red Bull) so as to inquire as to the details of how we could buy the Red Bull vending machines and distribution rights. When we reached a representative of Red Bull at their home office in California, we were told to contact "Lawrence" (last name unknown) who was in charge of vending for Red Bull on the east coast. "Lawrence" told us that Red Bull was working with several third party companies, including Creative Concepts of America, Inc. (hereinafter referred to as Creative Concepts), to finalize an agreement to broker the sales of Red Bull branded vending machines to the public. "Lawrence" told us that he would keep us updated as to which company will be selected as their official broker for the machines and that we should not make any decisions until Red Bull finalizes their deal first. If we wanted to do

business with Red Bull, we would have to wait for them to finalize their deal with a third party company. Towards the end of August, 2005 to early September, 2005, we received a call from "Lawrence" of Red Bull that Creative Concepts had acquired the exclusive right to sell the vending machines and distribution rights from Red Bull and we would only be able to buy the machines from Creative Concepts and no one else. If we wanted to be in the business of marketing and distributing Red Bull, we would have to go through Creative Concepts.

3. In September 2005, Max Jacobs, my business partner at Prime 4 Ventures, Inc., and I arranged a meeting with Creative Concepts to visit them in their Ft. Lauderdale, Florida offices. Max and I met with Andrew Kennedy, the president of Creative Concepts, and spoke with Charlie Milham, the sales representative of Creative Concepts, by phone. This meeting lasted several hours and at this meeting, we met the other people who worked in the Creative Concepts' office; we were shown the machines and were told how to operate them; and Andrew Kennedy and other people answered all of our questions regarding distribution rights. Andrew Kennedy told us that we if entered into the contract with Creative Concepts, that Prime 4 Ventures, Inc. would have the sole and exclusive rights to distribute Red Bull vending machines in the Borough of Manhattan. In addition, Prime 4 Ventures, Inc. was also to be a distributor in the boroughs of Brooklyn and Bronx and the counties of Nassau, Suffolk, Queens and Richmond, although in those areas it would not be exclusive.

4. Andrew Kennedy also told us to speak with Jim Murphy, the lawyer for Red Bull, to confirm the relationship between Creative Concepts and Red Bull. We tried very hard to get in touch with Jim Murphy and after many failed attempts, we finally reached

Jim Murphy by phone. Max and I had a conference call with Jim Murphy and Mr. Murphy confirmed his position as a lawyer for Red Bull and also confirmed the fact that we had no choice but to buy the machines and the rights to the machines from Creative Concepts and that Red Bull did not sell machines or the rights themselves, which is why they hired Creative Concepts to manage their vending sales. Lastly, we contacted Bob Bartels of Royal Vendors, the manufacturing company of the Red Bull vending machines, who confirmed that the machines were only sold through Creative Concepts. In October 2005, Max and I tried to contact "Lawrence" from Red Bull and we were told that he no longer worked for Red Bull and that we should now deal with Susan Sneider, who took over "Lawrence's" position.

5. After speaking with Andrew Kennedy and Charlie Milham of Creative Concepts, "Lawrence" and Jim Murphy from Red Bull, and Bob Bartels of Royal Vendors, Max and I decided that Prime 4 Ventures, Inc. would enter into the contract with Creative Concepts to buy the machines and the rights to sell the Red Bull product, because that was the only way to be in business with Red Bull and we wanted the sole and exclusive rights to distribute Red Bull vending machines in the Borough of Manhattan. On November 22, 2005, Prime 4 Ventures, Inc. entered into an agreement with Creative Concepts, pursuant to which Creative Concepts agreed to give Prime 4 Ventures, Inc. sole and exclusive rights to distribute Red Bull vending machines in the Borough of Manhattan. A copy of the agreement is attached to Eugene F. Haber's Affidavit as **Exhibit "A."** This sole exclusivity of distributing Red Bull vending machines in the Borough of Manhattan was the basis of the agreement and we would not have entered into the agreement with Creative Concepts without this term of the agreement. In

addition, Prime 4 Ventures, Inc. was also to be a distributor in the boroughs of Brooklyn and the Bronx and the counties of Nassau, Suffolk, Queens and Richmond, although in those areas it would not be exclusive. In accordance with such agreement, we paid Creative Concepts the sum of $150,745.00 for 50 vending machines and 10,000 energy drinks.

6. Thereafter, we accepted delivery of fifty (50) vending machines, but we soon discovered, in April 2006, that there were other parties that Creative Concepts had contracted with to sell the Red Bull product in the County of New York, where Prime 4 Ventures, Inc. was to have sole distribution rights. The acts of both defendants Red Bull and Creative Concepts breached the contract between the Prime 4 Ventures, Inc. and Creative Concepts.

7. Red Bull knew that Creative Concepts was giving an exclusive distributorship to Prime 4 Ventures, Inc. in the County of New York. Red Bull was aware of all of Creative Concepts' contracts with other operators and distributors. Andrew Kennedy and Charlie Milham of Creative Concepts, "Lawrence" and Jim Murphy from Red Bull, and Bob Bartels of Royal Vendors, all told us that the only way to do business with Red Bull was to go through Creative Concepts. Therefore, Red Bull permitted the sale of its product by others when it knew its agent, Creative Concepts, had entered into an agreement for exclusive distributorship of said product by Prime 4 Ventures, Inc.

8. When this breach of contract was discovered in April 2006, Prime 4 Ventures, Inc. ceased doing business with Creative Concepts. I thereafter contacted Red Bull in Santa Monica, California to discuss the breach of contract between Prime 4 Ventures, Inc. and Creative Concepts. Jim Murphy, the lawyer for Red Bull, contacted

me directly and offered to buy back 25 out of the 50 machines for $1,700.00 each, which is $42,500.00 total, which is approximately less than a third of the monies that we paid to Creative Concepts. It was clear from this offer by Jim Murphy from Red Bull that Red Bull was aware that Creative Concepts had done something wrong and this offer was an admission of liability on behalf of Red Bull for the acts of Creative Concepts. We accepted said sum in exchange for the return of the 25 vending machines that Creative Concepts had sold to us because we had already lost money on the deal. Red Bull did not pick up all 25 machines at the same time from Prime 4 Ventures, Inc. and therefore, did not pay for all 25 machines at the same time, as evidenced by the three (3) separate checks it received from Red Bull or its subsidiaries totaling $42,500.00. A copy of the three (3) checks that Prime 4 Ventures, Inc. received from Red Bull is attached to Eugene F. Haber's Affidavit as **Exhibit "B."** Prime 4 Ventures, Inc. still has 25 Red Bull vending machines in its possession in paid storage.

9. In late 2007, after the inception of the within action, and after Prime 4 Ventures, Inc. submitted the opposition to defendant Red Bull's motion to dismiss, we had a meeting with Michael Coleman, Red Bull's distribution manager for the tri-state area at Prime 4 Ventures, Inc.'s warehouse at 50 Wallabout Street, Williamsburg, NY, when Mr. Coleman came to pick up a number of vending machines that Prime 4 Ventures, Inc. sold back to Red Bull. I attended this meeting, along with my business partner Max Jacobs, and my father Merab Tanurishvili. At this meeting, Mr. Coleman told us that about 2 years earlier, Red Bull discovered Creative Concepts had illegally placed vending machines with the Red Bull logo on it throughout the tri-state area without Red Bull's permission. Mr. Coleman told us that when Red Bull discovered

these machines, Red Bull decided that instead of suing Creative Concepts for fraud and going through litigation, Red Bull would enter into a business agreement with Creative Concepts, wherein Red Bull would receive certain moneys from the profits derived from the Creative Concepts' machines. Red Bull was aware of Creative Concepts' contracts with Red Bull's customers and Red Bull then became aware of Creative Concepts' fraudulent and illegal behavior. Mr. Coleman told us that instead of Red Bull ceasing to do business with Creative Concepts, Red Bull ratified Creative Concepts' actions and did not warn other Red Bull customers of Creative Concepts' fraudulent behavior.

      10.    Then on January 16, 2008, Inc., I, as the president of Prime 4 Ventures, Inc., received an offer by email from Red Bull vending (vending@us.redbull.com). A copy of said email with its printed attachments is attached to Eugene F. Haber's Affidavit as **Exhibit "C."**  Prime 4 Ventures, Inc. is considered a Creative Concepts operator. The letter reads in part as follows:

> "Dear Creative Concepts Operator,
> Red Bull North America, Inc. ("Red Bull") has implemented a program to purchase from Creative Concepts Vending Machine Operators ("Operators") new and "like-new" Red Bull Royal Vending Machines that operators purchased from Creative Concepts of America, Inc. ("CCA") to sell Red Bull® brand energy drink. This program is for those Operators who are dissatisfied with their relationship with CCA and desire to exit the business of selling Red Bull® brand energy drink through vending machines. . .
>
> We at Red Bull regret any difficulty you have encountered in your business dealings with CCA and appreciate your support for the Red Bull® brand.
> Best Regards,
> Red Bull Vending"

      It is clear from the language above that Red Bull was aware of the fraudulent actions of Creative Concepts and became dissatisfied with Creative Concepts. Red Bull

was clearly aware that Creative Concepts had entered into other contracts with other Operators, those contracts had been breached, and Red Bull finally decided to do something about it by writing this letter to the Operators, including Prime 4 Ventures, Inc. A Purchase Agreement was attached to the email from Red Bull. However, Prime 4 Ventures, Inc. did not sign the Agreement. From our conversation with Michael Coleman, the distribution manager of Red Bull, and Red Bull's letter of January 16, 2008, there is clearly a contractual relationship between Red Bull and Creative Concepts, one that goes beyond the 4-corners of the express contract between Red Bull and Creative Concepts.

11. It is contended that the Court's Order dated March 3, 2008 unfairly infers that we have made up a story by referring to allegations and pleadings as a "telling of the tale." It seems that the Court has acted too hastily in this case without the benefit of oral arguments and discovery. The Court has assumed facts not in evidence by stating that Prime 4 Ventures, Inc. is "responsible for its own predicament" and that:

> "[i]t is difficult to imagine how it (the plaintiff) entered into a $150,000 transaction in reliance on an assurance that it would have exclusive rights to Manhattan without either (a) spelling out what that meant - i.e., whether it meant that CCA alone would be precluded to selling to others in Manhattan or instead that CCA, Red Bull and anyone else in the chain of distribution would be so limited, or (b) engaging in basic due diligence to ensure that it got what it thought it was paying for."

The Court has made a factual determination without a record. As previously stated, we had many meetings and phone calls with Andrew Kennedy and Charlie Milham of

Creative Concepts, Lawrence and Jim Murphy from Red Bull, and Bob Bartels of Royal Vendors, who all stated that in order to do business with Red Bull, we would have to go through Creative Concepts. We have not had an opportunity to present Prime 4 Venture, Inc.'s side of the story and to explain to the Court that we did indeed spell out the terms of exclusivity and we did engage in basic due diligence with Creative Concepts and Red Bull.

12.   Therefore, we are respectfully asking the Court to consider the newly discovered evidence of our conversation with Michael Coleman of Red Bull and the January 16, 2008 letter from Red Bull and to reverse its decision of March 3, 2008 granting the defendant Red Bull's motion to dismiss Prime 4 Venture, Inc.'s amended complaint and to allow this case to proceed with discovery.

WHEREFORE it is respectfully requested that Order of the Honorable Lewis A. Kaplan dated March 3, 2008, be reconsidered.

IRAKLY TANURISHVILI

Sworn to before this
25 day of March, 2008

Carol Wolfenson
Notary Public

CAROL WOLFENSON
NOTARY PUBLIC, State of New York
No. 02WO4645839
Qualified in Ulster County
Commission Expires June 30, 2001