UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

|  |  |
|---|---|
| PRIME 4 VENTURES, INC. | Civil Action No. |
| Plaintiff, | 07 CV 6912 (LAK) (MHD) |
| -against- | **AFFIDAVIT OF** |
|  | **EUGENE F. HABER** |

CREATIVE CONCEPTS OF AMERICA, INC.
and RED BULL OF NORTH AMERICA, INC.
                                        Defendants.
----------------------------------------------------------------X

STATE OF NEW YORK    )
COUNTY OF NASSAU     )SS.:

EUGENE F. HABER, being duly sworn, deposes and says:

1.      I am a member of Cobert, Haber & Haber, attorneys for the plaintiff Prime

4 Ventures, Inc. in the above caption action.  I submit this affidavit in support of

plaintiff's motion to reconsider the Order of the Honorable Lewis A. Kaplan dated March

3, 2008, pursuant to Rule 60(b)(2) and (b)(6) of the Federal Rules of Civil Procedure.

2.      I submit this affidavit to transmit to the Court true and correct copies of

certain documents referenced and quoted in the plaintiff's Memorandum of Law in this

action that are relevant to the Court's determination of the plaintiff's motion to

reconsider.

3.      Annexed hereto as **Exhibit "A"** is a true and correct copy of the agreement

between plaintiff Prime 4 Ventures, Inc. (hereinafter referred to as Prime 4) and

defendant Creative Concepts of North America, Inc. (hereinafter referred to as Creative

Concepts.)

4.      Annexed hereto as **Exhibit "B"** is a true and correct copy of the three (3) checks that plaintiff Prime 4 received from defendant Red Bull of North America, Inc. (hereinafter referred to as Red Bull.)

5.      Annexed hereto as **Exhibit "C"** is a true and correct copy of an email with its printed attachments from defendant Red Bull to plaintiff Prime 4 dated January 16, 2008.

6.      Annexed hereto as **Exhibit "D"** is a true and correct copy of the Affidavits of Service on defendants Creative Concepts and Red Bull, filed in New York State Supreme Court, New York County, prior to the removal of the case to Federal Court.

7.      Annexed hereto as **Exhibit "E"** is a true and correct copy of the contract between defendants Creative Concepts and Red Bull.

8.      Annexed hereto as **Exhibit "F"** is a true and correct copy of Judge Lewis A. Kaplan's rules.

9.      Annexed hereto as **Exhibit "G"** is a true and correct copy of Judge Lewis A. Kaplan's Order dated March 3, 2008.

_____
EUGENE F. HABER

Sworn to before this
27th day of March, 2008

_____
Notary Public
MELANIE I. WIENER
Notary Public, State of New York
No.01WI6165791
Qualified in Nassau County
Commission Expires May 14, 2011

# EXHIBIT A

NOV-21-2005 04:34PM  FROM-CREATIVE CONCEPTS    +9547429370    T-287  P.002/008  F-857

# Creative Concepts

## of America Inc.

4300 N. University Drive Suite A-106 Ft. Lauderdale, Florida 33351
Toll Free: 1-800-717-0730 Fax: 954 742-9370

# PURCHASE ORDER

PURCHASER NAME: ✓ PRIME 4 VENTURES, INC

ADDRESS: 136 Alex Circle

CITY: Staten Island    STATE: NY    ZIP: 10305

PHONE: Home (  )_____ Business (  )_____ Cellular ( 347 ) 342-8656

E-Mail Address:_____ , Fax: (  )_____ Other (  )_____

| QUANTITY | DESCRIPTION | TOTAL |
|---|---|---|
| 50 | Red Bull - Energy Drink Vending Machines | $ 151,495 |
| 50 | Credit for Professional Locating Service  (pay locator directly) | - $ 12,500 |
| 10000 | Top Selling Energy Drinks | Included |
| Other | Marketing Materials / Signs & Posters | Included |
| Other | Theft and Vandalism Warranty | Included |
| Other | Exclusive Distribution Rights For Your Area | Included |

| | | |
|---|---|---|
| Special Instructions: | Shipping Charges* | $  11,750 |
| | State Sales Tax (FL only) | N/A |
| | TOTAL DUE | $ 150,745 |

* Total shipping charge for entire shipment shall be calculated by multiplying  #  of machines x  $ 235

Total Due shall be payable prior to the delivery of product by either Wire Transfer, Cashier's Check, Personal Check or Business Check. Purchaser and Seller do hereby agree that the terms and conditions as expressed on the front and reverse of this order are the sole and complete expression of the agreement between the parties. The Purchaser acknowledges that a marketing package as well as a disclosure document was provided to him/her by the Seller prior to acceptance of this agreement.

Acknowledged, Read, and Accepted by:

✓ Andrew Kennedy 11/21/05

Seller: *Creative Concepts of America, Inc.*  date
LICENSE AIN#: BO2501

✓ _____ 11/22/05
Purchaser: *(Signature)*    date

PRIME 4 VENTURES, INC
Purchaser: *(Printed Name)*    date

NOV-21-2005  04:34PM   FROM-CREATIVE CONCEPTS
+9547428370                T-287  P.003/008  F-857

### Terms & Conditions

The Seller, Creative Concepts of America, Inc. agrees to sell and the Purchaser agrees to purchase the product described on the front side of this purchase order according to the following terms and conditions:

1. Creative Concepts of America, Inc. guarantees to replace, or at its option, repair any products or parts thereof, which are found to be defective in material or workmanship within three (3) years from the date of purchase. The obligation shall be limited to the replacement or repair of the products F.O.B. Creative Concepts of America, Inc.

2. The Seller agrees to ship the equipment and/or product within forty five (45) days. As per legal statutes, if the Seller fails to ship the product, equipment, or supplies necessary to begin substantial operation of the business within 90 days of the delivery date from the time that funds are received, the Purchaser may cancel this order by notifying the seller in writing. Title to the products shall pass to the Purchaser upon receipt of the total amount due.

3. This Purchase Order is intended by the parties as a complete and final expression of the entire Purchase Agreement between the parties and as a complete and exclusive statement of its terms. Both the front and back of the agreement have been read and agreed to by both the Purchaser and the Seller. Purchaser and Seller do hereby acknowledge he/she has done so with a clear understanding of this agreement and all of its terms and provisions. Purchaser has been given the opportunity to have an attorney and/or an accountant review this document. Purchaser understands and agrees that Seller offers no buy-backs, money back guarantees, or refunds. Buyer agrees that he/she is not relying upon any verbal or written representation whatsoever, except as expressly set forth in this agreement. Buyer acknowledges and agrees that Seller does not guarantee or represent that the equipment when installed will generate any specific level of income. This agreement can only be modified in writing, signed by the parties, or their duly authorized agents.

4. Seller reserves the right to modify and upgrade changes in packaging and product content for the betterment of the product line.

5. Purchaser agrees and understands that the Seller does not provide locating services. The seller may however, provide to the buyer professional locating companies that do provide locating service. In the event that the Purchaser decides to hire a locating company, any decision by purchaser to hire such locating company is at the Purchaser's sole discretion.

6. Purchaser agrees, understands and acknowledges that Seller and Purchaser's relationship will be that of independent parties. Purchaser acknowledges that this is neither a franchise offering nor a security offering and involves only the purchase of products. After the initial order, Purchaser is not obligated to purchase any items at any time from the Seller. Upon request, Seller shall provide Purchaser an opportunity to purchase additional products.

7. Purchaser agrees not to engage in any unlawful or illegal trade practices or business activity. Purchaser shall be responsible for all Federal, State and Local taxes as well as any licenses that may be required to do business. Purchaser shall act as an independent entity in all matters concerning Purchaser's business.

8. Purchaser acknowledges that this is neither a franchise offering nor a security offering. The Purchaser is not required to pay the seller or any affiliated person any additional sums in order to obtain or commence the Purchaser's business other than the purchase price as agreed to on this purchase order.

9. Seller agrees to appoint and maintain during the term of this Agreement an agent for the receipt of service of process within the State of Florida with respect to any action arising out of or based upon the relationship between the Seller and Buyer. Seller's agent for service is: Marie Levinson 4300 N. University Drive Suite A-106 Ft. Lauderdale, Florida 33351. Seller reserves the right to change its agent for service at any time and will provide written notice to Purchaser if such an event occurs prior to the completion of any sale.

10. Any dispute under this agreement shall be settled by arbitration before the American Arbitration Association of South Florida in accordance with their rules and procedures. Judgment on the award may be entered in any Court of competent jurisdiction. The laws of the State of Florida shall determine interpretation of this Agreement. Exclusive venue for the resolution of disputes shall be in Broward County, Florida.

NOV-21-2005 04:35PM  FROM-CREATIVE CONCEPTS                    +9547429870          T-287  P.004/008  F-657

## *Creative Concepts*

### of America Inc.

## Attachment A - To Purchase Order

### Protected Area

In an effort to limit the number of distributors based out of any given area, Creative Concepts of America, Inc. limits the number of distributors based on population. **Distributorships are given priority based on a first come first serve basis.**

Creative Concepts of America, Inc. does hereby grant to Distributor the right to operate based upon the following terms:

1.  In consideration of the initial purchase of ____50____ energy center vending machines, Creative Concepts of America, Inc. does hereby agree:

    * (Will not establish any other distributor in Manhattan if all terms are met)
    You will be 1 of 5 distributors in Brooklyn, Queens, Bronx and Long Island.
    You will be 1 of 2 distributors in Staten Island

2.  Distributor is <u>not required to expand</u> however in order to maintain as the only distributor based out of a given area, the distributor must expand their route by a minimum of ____25____ vending machines every 6 months for a period of 2 years. In the event that the distributor does not open up the minimum number of locations, Creative Concepts may assign another distributor to operate in the area.

3.  All equipment is covered under a complete 3 Year Warranty against defects in workmanship, materials, parts, service & labor and a 3 Year Theft and Vandalism policy. After the first year extended warranties are available for $ 12 per month per machine. (The machine is not designed for outdoor use.)

4.  There are no franchise or renewal fees.

Acknowledged, Read and Accepted by:

_____ 11/21/05    _____
Creative Concepts of America, Inc.  date    Distributor (signature)              date

#6211 P.003 /007                                          JUL.02.2006 21:32  7183617437

NOV-21-2005 04:35PM    FROM-CREATIVE CONCEPTS                    +9547428970                    T-287   P.005/008   F-857

## Rider to Contract entered into between Prime4 Ventures, Inc. and Creative Concepts of America, Inc. on

_____11/22/05_____

1) Both parties hereto acknowledge that this rider is to serve as an addition to the Contract entered into between Prime4 Ventures, Inc. ("Buyer") and Creative Concepts of America, Inc. ("Seller") on __11/22/0__ for the sale of Red Bull Vending Machines and other goods specified therein ("Contract"). This rider is hereby incorporated and made a part of the Contract.

2) Both parties hereto agree that in the event this Rider conflicts with any provisions of the Contract, this Rider shall be govern.

3) The Contract is composed of a Purchase Order, a Terms and Conditions page, and Attachment A to Purchase Order – Protected Area.

4) It is understood by all parties hereto that the total sum to be paid to the Seller is One Hundred Fifty Thousand, Seven Hundred Forty-Five ($150,745) Dollars, including all shipping and delivery fees, and that no other fees are payable to Seller except as provided herein.

5) The goods to be transferred to the Buyer comprise of: Fifty (50) soft drink vending machines officially branded "Red Bull" model No. RVRB372-1; Five Thousand (5,000) regular Red Bull energy drinks in 8oz cans; Five Thousand (5,000) sugar-free Red Bull energy drinks in 8oz cans; and sufficient quantities of marketing materials, including signs, posters, information packets, etc., as are reasonably necessary to establish and maintain Fifty (50) such vending machines.

6) Seller shall, at its sole expense provide a warranty for all machines sold to Buyer in accordance with this contract with the following terms: the initial warranty period shall begin on the date of delivery of the machine and run for three (3) years thereafter; in the event that a machine fails to operate for any reason, including improper workmanship and materials, theft, or vandalism, Seller shall, on reasonable notice and in reasonable time, at its sole expense, repair or replace the machine so that it is in full and proper working order; such warranty shall include all necessary materials, parts, service, and labor; after the expiration of the initial warranty period, Seller shall, at the Buyer's option, extend

Nov. 21 2005 12:02PM P4                    FAX NO. :7187278937                                              FROM :

JUL.02.2006 21:32 7183817477                                                                          #6211 P.005/ 007

the warranty, under the same terms, at a price no greater than Twelve ($12) Dollars per month per machine.

7) Seller agrees that Buyer shall have the exclusive right to own and operate officially branded "Red Bull" vending machines within the borough of Manhattan, in the City of New York; that there will be no more than Five (5) owners/operators of said machines, including the Buyer in the boroughs of Brooklyn, Queens, and Bronx in the City of New York; that there will be no more than Five (5) owners/operators of said machines, including the Buyer in the counties of Nassau and Suffolk in the State of New York; and that there will be no more than Two (2) owners/operators of said machines, including the Buyer in the borough of Staten Island in the City of New York.

8) Seller agrees that it and its officers, directors, and shareholders shall not, directly or indirectly, in whole or in part, own, act as a consultant to, or enter into sales or distribution agreements with any entity that violates, or attempts to violate the terms of Section 7 above.

9) Seller agrees to provide to Buyer additional supplies of Red Bull energy drink, either regular or sugar-free, at a cost not to exceed One Dollar and Twenty-Five Cents ($1.25) per can. Buyer is under no obligation to purchase any additional cans of Red Bull energy drink, and may, at its sole discretion, acquire said cans from any other source.

10) Buyers agree to purchase a minimum of Twenty-Five (25) additional vending machines from the Seller every Six (6) months for a period of Two (2) years, or until an additional One Hundred (100) machines, not counting the Fifty (50) sold hereunder, are purchased. Price for such machines shall be no more than ~~$2,335~~ per machine, not including shipping or product.  *0.4.*

11) Seller shall not charge any additional franchise or renewal fees of any kind at any time in the future.

12) All machines purchased hereunder are to be received no later than Forty-Five (45) days after the date payment is received by the Seller. In the event that all machines are not received within said time period, Buyer may request a full refund, and such refund shall be issued within ten (10) days of Buyer's request for such refund. In the event that some, but not all, machines have been received by the Buyer prior to the issuance of the refund, Seller shall have the right to reclaim, at its sole expense, said machines.

13) Seller hereby warrants and represents that it has full and clear title to all goods sold hereunder.

14) Seller hereby warrants and represents that by entering into this contract it is not violating the intellectual property rights of any other party and is not breaching any contract between the Seller and any other party.

15) Seller hereby warrants and represents that it has the right to use trademarked and copyrighted materials associated with the "Red Bull" label, and that it has the right to sell such materials to the Buyer.

16) In the event that Seller breaches the provisions of Sections 13, 14, or 15 hereof, Seller agrees to indemnify and hold harmless, by an attorney of the Buyer's choice, the Buyer against any claims against the Buyer relating to the Sellers breach of said provisions.

17) In the event that any action is brought by either party hereto arising under or relating to this Contract, the prevailing party shall be entitle to recover reasonable attorney's fees from the other party.

18) All vending machines referenced herein shall be officially branded "Red Bull" machines model No. RVRB372-1, or substantially similar future models, provided that said models are acceptable to the Buyer.

19) Parties hereby agree that for the purposes of this Contract faxed signatures shall be deemed original and fully enforceable.

20) Parties hereby agree that this contract shall not be binding on either party until fully executed by both parties.

Buyer                                          Seller

By:                                            By:

_[signature]_ 11/2/05                          _Andrew Kennedy_ 11/2/05

President,
Prime4 Ventures, Inc.                          Creative Concepts of America, Inc.

# EXHIBIT B







# EXHIBIT C

# YAHOO! MAIL
### Classic

Print - Close Window

| | |
|---|---|
| **Date:** | Wed, 16 Jan 2008 10:23:35 -0800 (PST) |
| **From:** | "Eugene Haber" <eugene@coberthaber.com> |
| **Subject:** | Fwd: Purchase Agreement - CCA Vending Machines |
| **To:** | "Melanie Weiner" <melanie.wiener@yahoo.com> |

Primt this out and discuss with me. Gene
Note: forwarded message attached.

## Forwarded Message

| | |
|---|---|
| **From:** | vending@us.redbull.com |
| **Subject:** | Purchase Agreement - CCA Vending Machines |
| **To:** | vending@us.redbull.com |
| **Date:** | Tue, 15 Jan 2008 17:39:09 -0800 |

## Plain Text Attachment

Dear CCA Operator,

Please find attached the Instruction Letter and Purchase Agreement.  If you
would like to participate in the purchase program, please follow the
directions as outlined in the Instruction Letter carefully.

Thank you.

(See attached file: Vending Purch. Program letter-2008.pdf)

(See attached file: Vending Machine Purchase Agreement-2008-X.DOC)

## Attachments

**Files:**

   📎 **Vending_Purch._Program_letter_2008.pdf** (41k)

   📎 **Vending_Machine_Purchase_Agreement_2008_X.DOC** (73k) [Preview]

Dear Creative Concepts Operator,

Red Bull North America, Inc. ("Red Bull") has implemented a program to purchase from Creative Concepts Vending Machine Operators ("Operators") new and "like-new" Red Bull Royal Vending Machines that operators purchased from Creative Concepts of America, Inc. ("CCA") to sell Red Bull® brand energy drink. This program is for those Operators who are dissatisfied with their relationship with CCA and desire to exit the business of selling Red Bull® brand energy drink through vending machines. Red Bull will purchase eligible vending machines for $1,700.00 each for new (still in the box) machines or $1,500.00 each for used machines that are in "like-new" condition. Red Bull has sole and absolute discretion to categorize whether a machine is "new" or "like-new," or to accept or reject vending machines for purchase for any reason and reserves the right to modify, suspend or cancel this program at any time.

To be eligible for the program:

- You must have purchased Red Bull Royal Vending Machines, model RVRB-372, from CCA; and
- The vending machines must be in new or "like-new" condition to be determined in Red Bull's sole discretion.

To participate in the program, you must do the following before **February 29, 2008**:

- Review the accompanying Purchase Agreement and fill in the information required by SCHEDULE 1 to the Purchase Agreement;
- Take individual photographs of all vending machines you identify on SCHEDULE 1 and note the serial number of the machine on the photograph;
- Sign the Purchase Agreement, which includes a release of claims;
- Email the signed Purchase Agreement, along with the completed SCHEDULE 1 and the vending machine photographs to vending@us.redbull.com on or before February 29, 2008; and
- All of your materials must be received by Red Bull Vending on or before February 29, 2008

Once Red Bull receives your signed Purchase Agreement, SCHEDULE 1 and vending machine photographs, you will be contacted by a Red Bull representative to arrange for an inspection of the machines to confirm the condition of the vending machines and the total purchase price. You must gather all of your vending machines at a single, centralized location to be determined exclusively by Red Bull, at which time they will be inspected by a Red Bull representative. Red Bull will notify you of the location shortly after February 29, 2008. No Purchase Agreement will be final or binding upon Red Bull until signed by an authorized Red Bull representative after inspection. Seller will be bound by the Purchase Agreement once payment for the machines is accepted.

We at Red Bull regret any difficulty you have encountered in your business dealings with CCA and appreciate your support for the Red Bull® brand.

Best regards,
Red Bull Vending

# PURCHASE AGREEMENT

Red Bull North America, Inc. based in Santa Monica, California ("RBNA"), agrees to purchase the Red Bull Royal Vending Machine(s), model RVRB-372, identified on Schedule 1 to this agreement ("Vending Machines") from the undersigned Seller, together with all warranties applicable to those Vending Machines in accordance with the following terms and conditions:

**Vending Machines to be Purchased.** The Vending Machines subject to this agreement were manufactured by Royal Vending Machines, were purchased from Creative Concepts of America, Inc. ("CCA") and are in new or like-new condition and in Seller's possession and control. The serial number of each Vending Machine Seller proposes to sell under this agreement is set forth on Schedule 1 to this agreement. The final Vending Machines subject to purchase will be determined after inspection by an authorized RBNA representative.

**Vending Machine Inspection and Pick-up.** Seller at Seller's own cost will present all Vending Machines for sale at one location predetermined between the parties for inspection prior to the sale. Vending Machines will remain in that same location until the transaction is completed. The determination of whether a Vending Machine is in "new" or "like-new" condition or whether it is eligible for purchase by RBNA under this agreement will be made in RBNA's sole and absolute discretion and RBNA reserves the right to reject some or all of the Vending Machines listed on Schedule 1. RBNA shall give notice to Seller at least 24 hours before RBNA desires to take possession of the Vending Machines and shall arrange transportation at its own cost.

**Purchase Price.** RBNA will pay Seller the following amounts for each Vending Machine purchased under this agreement. The purchase price will be paid by check at the time RBNA takes possession of the Vending Machines.

- New Vending Machines: One Thousand Seven Hundred Dollars ($1,700.00)
- Used Vending Machines that are in "like-new" condition: One Thousand Five Hundred Dollars ($1,500.00)

**Verification of Vending Machines and Purchase Price.** At the time of inspection, Seller and RBNA shall verify which Vending Machines from Schedule 1 will be purchased by RBNA and the total purchase price for all machines. At the time of inspection, Seller shall sign Schedule 1 acknowledging Seller's agreement to the purchase price.

**General Release.** Seller for himself/herself/itself and on behalf of all persons acting by, through, under or in concert with Seller ("Seller's Affiliates") do hereby fully, finally and forever release, forgive and discharge RBNA and its parents, subsidiaries, directors, officers, shareholders, agents, representatives, and employees (collectively, "RBNA's Affiliates"), from any and all rights, claims, suits, actions, or causes of action (collectively "claims") that Seller or Seller's Affiliates now has or may have against RBNA or RBNA's Affiliates, including, but not limited to any claims arising out of, relating to, connected with or incidental to the purchase, ownership, or use of any Vending Machines purchased from CCA, any relationship with CCA, the sale of Red Bull® energy drink or any alleged business transaction with RBNA or any other act, event or omission relating thereto occurring before the date of this agreement. Seller acknowledges and understands that there is a risk that subsequent to the execution of this agreement, he or she may discover claims which were unknown or unanticipated at the time of the execution of this agreement, and which if known on the date of the execution of this agreement might have materially affected his or her decision to enter into and execute this agreement. Seller further agrees that by reason of the releases contained

herein, Seller is assuming the risk of such unknown claims and agrees that this release applies thereto. In connection therewith, Seller expressly waives the benefits of Section 1542 of the California Civil Code, and any other similar statutory or case law authority of the United States of America, of any State, territory or possession thereof, which section reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

CCA is not a RBNA Affiliate and nothing in this release is meant to release or affect any claims Seller may have against CCA.**Acknowledgment of Trademark Rights.** Seller acknowledges and agrees that Seller has no rights in or to the Red Bull trademarks, to use or authorize the use of the Red Bull name or marks in any fashion, and to the extent Seller has claimed any such rights, Seller hereby releases and relinquishes all such rights. Seller will cease use of any advertising, telephone numbers, domain names associated in any way with the Red Bull marks and will assist RBNA in the transfer of any such advertising, telephone numbers or domain names as required by RBNA.**Warranty of Authority.** Seller warrants and represents to RBNA that Seller is the owner of the Vending Machines and is duly authorized to sell, convey, or transfer the Vending Machines under the terms set forth in this agreement free and clear of any liens or claims of any third parties. **Final Agreement.** This writing is intended by Seller and RBNA as a final expression of their agreement concerning the matters contained herein.**Dispute Resolution.** Seller agrees that the sole forums for any dispute arising out of or relating to this agreement shall be the Superior Court of the County of Los Angeles or the United States District Court of the Central District of California. Seller hereby waives the defense of an inconvenient forum to the maintenance of an action in the courts identified in this paragraph and agrees not to commence any action of any kind against RBNA or RBNA's Affiliates arising out of or relating to this Agreement except in the courts identified in this paragraph. The parties agree that California law shall govern the construction, interpretation, validity and enforcement of this Agreement. **Effective Date of Agreement.** This agreement and the releases contained in this agreement shall be effective upon Seller's acceptance of the purchase price for any of the Vending Machines purchased by RBNA. **Use of Electronic Signature.** Use of an electronic signature or facsimile will be given full legal effect and shall bind Seller. IN WITNESS WHEREOF, the parties have executed this Agreement themselves or by their authorized representatives.

**Buyer:**                                    **Seller:**

Name: <u>Red Bull of North America, Inc.</u>      Name: _____


Signature: _____      Signature: _____
Date: _____                    Date: _____

- 2 -

**SCHEDULE 1**

Name of Creative Concepts Operator: _____

Address: _____

Phone Number(s): _____

Email: _____

Address of Equipment: _____

_____

|  | Serial Number | Date purchased | RBNA USE ONLY Purchase Amount |  | Serial Number | Date purchased | RBNA USE ONLY Purchase Amount |
|---|---|---|---|---|---|---|---|
| 1. |  |  |  | 20. |  |  |  |
| 2. |  |  |  | 21. |  |  |  |
| 3. |  |  |  | 22. |  |  |  |
| 4. |  |  |  | 23. |  |  |  |
| 5. |  |  |  | 24. |  |  |  |
| 6. |  |  |  | 25. |  |  |  |
| 7. |  |  |  | 26. |  |  |  |
| 8. |  |  |  | 27. |  |  |  |
| 9. |  |  |  | 28. |  |  |  |
| 10. |  |  |  | 29. |  |  |  |
| 11. |  |  |  | 30. |  |  |  |
| 12. |  |  |  | 31. |  |  |  |
| 13. |  |  |  | 32. |  |  |  |
| 14. |  |  |  | 33. |  |  |  |
| 15. |  |  |  | 34. |  |  |  |
| 16. |  |  |  | 35. |  |  |  |
| 17. |  |  |  | 36. |  |  |  |

30313654\V-1

| 18. | | | | 37. | | | |
|-----|---|---|---|-----|---|---|---|
| 19. | | | | 38. | | | |

| FOR RBNA USE ONLY | Total Purchase Amount: | |
|---|---|---|
| Name of Inspector: | | |
| Signature of Inspector: | | |
| Date of Inspection: | | |

TO BE SIGNED ONLY AFTER INSPECTION BY RBNA:By signing below, Seller acknowledges and agrees to the Total Purchase Amount and the machines being purchased.Sellers Signature: _____Date: _____

30313654\V-1

# EXHIBIT D

INDEX NO:  108075/07

STATE OF NEW YORK        COUNTY OF NEW YORK        FILED ON:  June 8, 2007

SUPREME COURT *Eugene Weber* DISTRICT:

*Prime 4 Ventures, Inc.*

vs                                                                                                    Plaintiff(s)

*Creative Concepts of America, Inc., et. ano.*

Defendant(s)

STATE OF NEW YORK, COUNTY OF ALBANY, SS.:

## AFFIDAVIT OF SERVICE
## BY THE SECRETARY OF STATE

_____Stephen L. Collen_____, being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____July 2, 2007_____, at ___3:00 pm___, at the office

of the Secretary of State of the State of New York in the City of Albany, New York, deponent served the annexed

Summons and Complaint

_____, on

RED BULL NORTH AMERICA INC. h/s/a Red Bull Inc.

_____,

Defendant in this action, by delivering to and leaving with _____Donna Christie_____, Authorized Agent, in the Office of

the Secretary of State of the State of New York, personally at the Office of the Secretary of State of the State of New

York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State

the statutory fee, if required. Service was made pursuant to Section ___306 Business Corporation Law___.

☐  Service was completed by mailng notice of such service and one (1) true copy thereof by ☐ Registered or

☐ 1st Class Mail and Certified Mail, # _____, Return Receipt Requested on _____

to said defendant at: _____.

Papers so served were properly endorsed with the index number and date of filing.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the

Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

Description of the person served:  Approx. Age: ___44 years___    Approx. weight: ___130 lbs___    Approx. Ht.: ___5'5"___

Sex: ___female___  Color of skin: ___white___  Color of hair: ___brown___  Other: _____

Sworn to before me on_____July 3, 2007_____

_____
MARCY A. O'HARE
NOTARY PUBLIC, State of New York
No. 4865530, Qualified in Albany County
Term Expires July 14, 2010

_____
Stephen L. Collen

Invoice•Work Order # 0705331

State of New York - Department of State
Receipt for Service

Receipt #: 200706270467
Date of Service: 06/26/2007
Service Company: 83 STAR PROCESS SERVICE

Cash #: 200706270423
Fee Paid: $40 - CHECK

Service was directed to be made pursuant to: SECTION 307 OF THE BUSINESS
CORPORATION LAW

Party Served: CREATIVE CONCEPTS OF AMERICA INC

Plaintiff/Petitioner:
PRIME-4 VENTURES, INC.

Service of Process Address:

Secretary of State
By DONNA CHRISTIE

State of New York - Department of State
Receipt for Service

Receipt #: 200707030436                    Cash #: 200707030369
Date of Service: 07/02/2007                Fee Paid: $40 - CHECK
Service Company: 83 STAR PROCESS SERVICE

Service was directed to be made pursuant to: SECTION 306 OF THE BUSINESS
CORPORATION LAW

Party Served: RED BULL NORTH AMERICA, INC.

Plaintiff/Petitioner:
    PRIME 4 VENTURES, INC.

Service of Process Address:
RED BULL NORTH AMERICA, INC.
C/O NRAI
875 AVENUE OF AMERICAS STE 501
NEW YORK, NY 10001

                                        Secretary of State
                                        By DONNA CHRISTIE

INDEX NO: 108075/07

FILED ON: June 8, 2007

STATE OF NEW YORK            COUNTY OF NEW YORK            DISTRICT:

SUPREME COURT

NEW YORK
COUNTY CLERK'S OFFICE

JUL 1 3 2009

NOT COMPARED
WITH COPY FILE

*Prime 4 Ventures, Inc.*

vs                                                                      Plaintiff(s)

*Creative Concepts of America, Inc., et. ano.*

Defendant(s)

STATE OF NEW YORK, COUNTY OF ALBANY, SS.:

## AFFIDAVIT OF SERVICE
## BY THE SECRETARY OF STATE

_____Stephen L. Collen_____, being duly sworn, deposes and says: deponent is over

the age of eighteen (18) years; that on _____June 26, 2007_____, at _12:00 pm_, at the office

of the Secretary of State of the State of New York in the City of Albany, New York, deponent served the annexed

_____Summons and Complaint_____, on

_____Creative Concepts of America, Inc._____,

Defendant in this action, by delivering to and leaving with _____Donna Christie_____, Authorized Agent, in the Office of

the Secretary of State of the State of New York, personally at the Office of the Secretary of State of the State of New

York, one (1) true copy thereof and that at the time of making such service, deponent paid said Secretary of State

the statutory fee, if required. Service was made pursuant to Section _307 Business Corporation Law_ .

[x]  Service was completed by mailing notice of such service and one (1) true copy thereof by     [x] Registered or

☐ 1st Class Mail and Certified Mail, # _RE314663229_ , Return Receipt Requested on _June 27, 2007_

to said defendant at: _____4300 N. University Drive, A-106, Ft. Lauderdale, FL 33351_____.

Papers so served were properly endorsed with the index number and date of filing.

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the

Secretary of State of New York, duly authorized to accept such service on behalf of said defendant.

Description of the person served: Approx. Age: _44 years_     Approx. weight: _130 lbs_     Approx. Ht.: _5'5"_

Sex: _female_   Color of skin: _white_   Color of hair: _brown_   Other: _____

Sworn to before me on_____June 27, 2007_____

MARY A. O'HARE
NOTARY PUBLIC, State of New York
No. 4865560, Qualified in Albany County
Term Expires July 14, 2010

Stephen L. Collen

Invoice•Work Order # 0705330

# EXHIBIT E

## AGREEMENT FOR THE PURCHASE AND SALE OF MERCHANDISE

THIS AGREEMENT FOR THE PURCHASE AND SALE OF MERCHANDISE (this "Agreement") is hereby entered into on this 15th day of September, 2005 by and between Red Bull North America, Inc., a California corporation located at 2525 Colorado Avenue, #320 Santa Monica, CA 90404 ("Red Bull") and Creative Concepts of America, Inc., a Florida corporation located at Executive Courts Office Building, 4300 N. University Drive, Suite A-106 Lauderhill, FL 33351 ("Purchaser").

WHEREAS: Red Bull has the exclusive rights to represent and commercialize in the United States all products bearing the Red Bull family of trademarks, including, by way of example only, "Red Bull", the can design, and the double-bull and sun device (the "Red Bull Marks"); and

WHEREAS: Purchaser wishes to purchase for resale certain of Red Bull's Machines and Product (as both are defined below).

NOW THEREFORE, in exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in the understanding that the preceding preamble is an integral part to this Agreement, the parties have freely and willingly agreed to the following:

ARTICLE I.    Terms of Sale.

1.1    In general. Red Bull will permit its agents to sell to Purchaser, the machines described in Attachment "A" of this Agreement (hereafter, the "Machines") under the terms and conditions established herein. Attachment A is incorporated herein by this reference. At the effective date of this Agreement, Red Bull designates Royal Vendors, Inc. as the agent authorized to sell Machines to Purchaser (an "Agent"). Red Bull may modify or remove this designation at any time without notice.

1.2    Non-exclusive. All sales of the Machines to Purchaser will be non-exclusive. Red Bull or its Agent may sell the Machines to third parties approved by Red Bull at any time.

1.3    For resale only. Purchaser will purchase the Machines from Agent for resale only.

1.4    Sales by Agent. Purchaser will purchase Machines from Agent only. Purchaser will purchase Machines directly from Agent, and make payments for the Machines directly to Agent.

1.5    Terms of Sales by Agent. All purchases of Machines from Agent will be delivered C.I.F. to Purchaser's warehouse. Agent and Purchaser will agree on a purchase price. REDACTED No credit will be extended by Agent. All purchases will be pre-paid.

1

**ARTICLE II.    Terms of Resale.**

2.1    Existing products. Purchaser has sold and currently sells vending machines that infringe upon the intellectual property rights and other rights of Red Bull. Purchaser will ensure that these machines exclusively vend Red Bull Energy Drink and Red Bull Sugarfree (collectively, the "Products"). In the event that Purchaser cannot ensure this exclusivity for a particular vending machine, Purchaser will ensure that all infringing material is removed from that vending machine.

2.2    Machines. From the effective date of this Agreement forward, Purchaser will not sell or distribute any vending machines other than Machines to its customers. Purchaser will immediately cease sales and distribution of all other vending machines and begin sales of the Machines to its customers. Purchaser will ensure that only Products are sold in the Machines. Purchaser will provide monthly reports summarizing sales, including the number of Machines sold to Purchaser's customers, the customer's name, city, and state.

2.3    Representations to customers. Purchaser will not represent to its customers that it has exclusive rights to sell Machines or other vending machines associated with Red Bull. Purchaser will not represent to its customers that it can provide exclusive territories, routes, or locations. Purchaser will submit all of Purchaser's intended promotional communication to customers or potential customers to Red Bull for review and approval. Purchaser will not issue promotional communications without Red Bull's prior written approval.

2.4    Exclusive stock. Purchaser will require that its customers stock only Product in the Machines.

2.5    Purchases of product. If Purchaser wishes to purchase Product for resale, Purchaser will purchase Product only from distributors authorized by Red Bull, utilizing Red Bull's central billing system. REDACTED All sales of Product will be on such terms as Red Bull establishes from time to time, and will require payment in advance.

2.6    Material Breach. Violations of any provision in this Article II constitute a material breach of this Agreement.

**ARTICLE III.    Term and Termination.**

3.1    This Agreement will come into force as of the date first written above and will have a term of one year as of such date. This Agreement will automatically renew for successive one year terms, unless earlier terminated in accordance with this Agreement. Either party may terminate this Agreement, without cause at any time and without liability, by providing notice to the other party five (5) days prior to the effective date of termination.

**ARTICLE IV.    General Provisions.**

4.1   Sales to third parties. Red Bull or its Agent may sell the Machines to third parties at any time.

4.2   Intellectual property. Purchaser will acquire no right, title or interest in the Red Bull Marks. No assignment or license is granted to Purchaser with respect to the Red Bull Marks. Purchaser understands and agrees that Red Bull holds and retains full ownership of the Red Bull Marks and all goodwill therein, and that all use by Purchaser is for, and inures to the benefit of, Red Bull. Purchaser will not adopt, use or register any words, phrases or symbols which, in Red Bull's sole judgment, are confusingly similar to any of the Red Bull Marks.

4.3   Sales force. Purchaser hereby accepts, declares and acknowledges that it shall resell the Machines purchased from the Agent using its own sales force at Purchaser's sole cost.

4.4   No partnership. Nothing herein contained shall constitute a partnership between or joint venture by the parties hereto, or make either party the agent of the other. Neither party shall hold itself out contrary to the terms of this paragraph, and neither party shall become liable for the representation, act or omission of the other contrary to the provisions hereof. This Agreement is not for the benefit of any third party and shall not be deemed to give any right or remedy to any third party, whether referred to herein or not.

4.5   Confidentiality. Purchaser will not disclose the terms of this Agreement to any third party except purchaser's counsel or when required by law. Red Bull shall approve in advance and in writing all publicity materials and press releases relating to this Agreement.

4.6   Audit rights. Red Bull may conduct an audit of Purchaser's records. Purchaser will make available such records for Red Bull's review at any time during regular business hours. These records will include, at a minimum, financial records and other records maintained in the regular course of business.

4.7   Entire agreement. This document, together with all Attachments hereto, represents the complete agreement between Red Bull and Purchaser, all prior negotiations, representations and agreements having been merged herein, and may only be modified by a written document signed by both parties hereto. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality, and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

4.8   Assignment. Red Bull may assign this Agreement or any interest herein to any party. In the event Red Bull shall sell or assign all of its right, title and interest in and to the Agreement, and in the event such assignee shall assume in writing all of the executory obligations of Red Bull as of the date of such transfer, Red Bull shall be, and is hereby, released from all further obligations to Purchaser hereunder accruing from and after such transfer. This Agreement may not be assigned, in whole or in part, by Purchaser without Red Bull's prior written approval which may be withheld in its sole discretion. This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors, and assigns.

3

4.9    Waiver.  No express or implied waiver by either Red Bull of any provision of this Agreement or of any breach or default of the other shall constitute a continuing waiver, and no waiver shall be effective unless in writing.

4.10   Indemnification.  Purchaser agrees to indemnify and hold Red Bull, its parent, subsidiaries, subsidiaries of its parent, affiliates and their respective officers, agents, directors, employees and licensees harmless from any and all third party claims, actions or proceedings of any kind and from any and all damages, liabilities, costs and expenses (including reasonable legal fees and costs) relating to or arising out of (i) any negligent or intentional acts of Purchaser, (ii) any violation, breach or alleged breach of any of the warranties, representations, covenants or agreements contained in this Agreement, or (iii) any error or omission in any of the material or information furnished to Red Bull in accordance with this Agreement.  If Purchaser shall fail promptly to do so, Red Bull shall have the right to adjust, settle, litigate and take any other action Red Bull deems necessary or desirable for the disposition thereof.  In any such event, Purchaser shall reimburse Red Bull on demand for all amounts paid or incurred by Red Bull as a result thereof.

4.11   Choice of law; Venue.  This Agreement shall be governed by the laws of the State of California.  The parties hereto consent and submit to the exclusive jurisdiction of the state and federal courts in Los Angeles County, California.

4.12   Notices.  All notices or other communications required to be given hereunder shall be given in writing and shall be deemed received upon the earlier to occur of (i) actual receipt (via hand delivery or otherwise) (ii) the next business day, when sent via a reputable overnight courier for next day delivery.  All notices will be addressed to the parties at the locations given in this Section 4.12, or to such addresses as any of the parties hereto may designate in writing.

Red Bull:        Red Bull North America, Inc.
                 2525 Colorado Avenue, #320
                 Santa Monica, CA 90404
                 Attn: Legal Department

Purchaser:       Creative Concepts of America, Inc.
                 Executive Courts Office Building
                 4300 N. University Drive, Suite A-106
                 Lauderhill, FL 33351
                 Attn: President

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed by their duly authorized representatives on the date first written above.

Red Bull North America, Inc.                    Creative Concepts of America, Inc.

By: _____                   By: _Marie Levinson_____

Title: _CEO_____                               Title: _President_____

Date: _9-20-05_____                            Date: _9-15-05_____

4

# EXHIBIT F

**LEWIS A. KAPLAN**
**United States District Judge**
**United States Courthouse**
**500 Pearl Street**
**New York, NY 10007**

## COMMUNICATIONS

For questions concerning general calendar matters, call the Deputy Clerk, Mr. Andrew Mohan at (212) 805-0104.

*Counsel are not to communicate with Chambers by phone except in case of emergency. Counsel are not to communicate with chambers via facsimile without prior approval.* Copies of correspondence between counsel *should not be sent to the Court.*

Except as otherwise provided herein, the Court's procedures are governed by the Local Rules of this Court and the Federal Rules of Civil Procedure. *Counsel should not call the Judge's law clerks with respect to procedural questions.*

## CONFERENCES

*The attorney who will serve as principal trial counsel must appear at all conferences with the Court.*

Unless the parties are otherwise notified, a pending motion to dismiss the entire action cancels any previously scheduled initial scheduling conference.

## MOTION RULES AT A GLANCE

| | |
|---|---|
| Pre-motion conference: | Discovery disputes only unless otherwise ordered in a specific case. |
| Motion returnable: | **Motions are to be filed without a return date.** |
| Courtesy Copies: | Two courtesy copies should be addressed to Judge Kaplan and delivered to the Marshals at the Worth Street entrance, 500 Pearl Street (at the time the originals are filed). |

## MOTION RULES AND PROCEDURES

### Discovery Disputes

#### Non-ECF Cases

A conference must be requested before the filing of any motion relating to a discovery dispute. Counsel wishing to make such a motion should send a letter to the Court concisely describing the basis for the proposed motion and requesting a conference. The party opposing the relief sought may respond within two (2) business days by letter briefly describing why the relief sought should not be granted. Letters seeking such conferences and responses thereto shall not exceed three (3) pages.

#### ECF Cases

Discovery disputes in ECF cases shall be raised with the Court by motion filed electronically. The motion shall not exceed four (4) pages in length, including affidavits and declarations, but exclusive of exhibits. In addition, counsel filing such motions electronically shall send a letter to the Court stating that such a motion has been filed electronically. The party opposing the relief sought may respond within two (2) business days electronically, briefly describing why the relief sought should not be granted. No briefs or memoranda of law shall be filed unless requested by the Court.

Regardless of whether the case is an ECF case, counsel should be prepared to discuss with the Court the matters raised by such letters or motions, as the case may be, as the Court will seek to resolve discovery disputes quickly, often by telephone conference call.

Discovery disputes should be raised with the Court promptly once it is clear that the issues cannot be resolved by agreement.

### Return Dates and Special Filing Rules

All motions, unless brought on by an Order to Show Cause, should be made without a return date.

The original of all motion papers, opposition papers, and replies should be filed in the Clerk's office. Two (2) courtesy copies for the use of Chambers should be delivered to the Marshals at the Worth Street entrance, 500 Pearl Street (at the time the originals are filed).

**Orders to Show Cause and TROs**

All applications for orders to show cause and temporary restraining orders first shall be brought to the Orders and Appeals Clerk for approval and then to Chambers, provided that in ECF cases, counsel shall adhere to any instructions given by the Clerk's Office with respect to such applications. Applications for temporary restraining orders will be entertained only after notice to the adversary absent a persuasive showing that the giving of notice itself is likely to result in immediate and irreparable injury.

**Briefs and Motion Papers**

Citations to New York and United States Supreme Court cases shall contain citations to the official reports and parallel cites to New York Supplement and Supreme Court Reporter, respectively.  Citations to unreported cases not available on WESTLAW should be accompanied by a copy of the case cited.

Memoranda of law in support of or in opposition to motions may not exceed thirty-five (35) pages, double spaced, in length and, if in excess of ten (10) pages, should contain  tables of contents and authorities.  Reply memoranda may not exceed ten (10) pages, double spaced, in length.  All exhibits should be tabbed and indexed.  A copy of the complaint should accompany the moving papers.  Requests to file memoranda exceeding the page limits set forth herein must be made *in writing* five (5) days prior to the due date except with respect to reply briefs, in which case the time is the day prior to the due date.

*Answering and reply papers*, if any, are to be served within the time specified in S.D.N.Y. Civ. R. 6.1.  At the time reply papers are due, counsel shall advise the Court of any Monday morning within the next six (6) week period when they would be *unavailable* for oral argument.

*Oral Argument*

After answering papers are received, the Court will notify counsel of the time and place for oral argument if the Court regards oral argument as likely to be helpful.  The Court will have reviewed the papers prior to argument.

**Reports, Recommendations and Orders of Magistrate Judges**

The page limits applicable to memoranda of law on motions apply also to objections to reports and recommendations, and appeals from orders of, Magistrate Judges.

**Adjournments/Extensions**

All requests for extensions of time or adjournment of motions, pretrial conferences, and other matters must be made *in writing* with copies to all counsel and received in chambers not less than two business days before the scheduled time.  Such requests must include the number and disposition of any prior requests for similar extensions and state whether opposing counsel

# EXHIBIT G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------ x

PRIME 4 VENTURES, INC.,

                              Plaintiff,


              -against-                                    07 Civ. 6912 (LAK)


CREATIVE CONCEPTS OF AMERICA, INC., et ano.,

                              Defendants.
------------------------------------------------ x

```
┌─────────────────────────────────────┐
│ USDS SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____                │
│ DATE FILED:  3/3/08                  │
└─────────────────────────────────────┘
```

## ORDER

LEWIS A. KAPLAN, *District Judge.*

      Plaintiff here sues defendant Creative Concepts of America, Inc. ("CCA") for breach of contract and defendant Red Bull of North America, Inc. ("Red Bull") for (1) fraud or misrepresentation by CCA on the theory that CCA acted with apparent authority conferred by Red Bull, and (2) tortious interference with plaintiff's business relationship with CCA.  CCA has not appeared in the action and, so far as the record discloses, has not been served.  Red Bull moves to dismiss the amended complaint as against it pursuant to Fed. R. Civ. P. 12(b)(6).


*Facts*

      As this is a motion to dismiss, the Court assumes the truth of the facts set forth in the complaint together with the two contracts effectively incorporated therein by reference.

      Plaintiff, before entering into any contract with CCA, spoke to unnamed employees of Red Bull about buying vending machines and drink and was referred to an employee named "Lawrence." Lawrence allegedly told plaintiff that Red Bull was working with several third party companies, including CCA, "to broker the sales of the branded vending machines to the public."

      Subsequently, on September 15, 2005, Red Bull entered into a contract with CCA pursuant to which it agreed to permit its agents to sell to CCA, on a non-exclusive basis, vending machines and Red Bull product.  CCA expressly covenanted that it would not represent to its customers that it had exclusive rights to sell Red Bull machines. The agreement further provided that nothing therein would make either party the agent of the other.

2

On or about November 22, 2005, plaintiff entered into a written agreement with CCA to purchase 50 Red Bull soft drink vending machines and 10,000 cans of Red Bull drink for $150,745.[1] The rider provided in substance that plaintiff would "have the exclusive right to own and operate officially branded 'Red Bull' vending machines within the borough of Manhattan" and that there would be no more than fixed numbers of owner/operators in other boroughs and in Nassau and Suffolk Counties. The purported grant of exclusivity as to Manhattan allegedly was a material inducement to plaintiff's agreement to the deal. Nevertheless, plaintiff claims that it soon discovered "that there were other parties that defendants, either acting alone or in concert, had contracted with to sell the RED BULL product in the Borough of Manhattan."

The first claim for relief is against CCA for breach of contract.

The second is against Red Bull. In addition to the facts related above, the amended complaint alleges that "towards the end of August 2006 to early September 2006" – and thus almost a year after plaintiff signed the contract with CCA – plaintiff again spoke to Lawrence, who allegedly told it that CCA had acquired the right to sell the vending machines and distribution rights and that plaintiff had to buy the machines and product from CCA.

Finally, the last claim for relief asserts that Red Bull knew that CCA was granting a distributorship to plaintiff that was exclusive as to Manhattan but tortiously interfered with that agreement by selling its products to others notwithstanding the exclusivity representation of its alleged agent, CCA.

## Discussion

As CCA has neither been served nor appeared, there is no reason to address the first claim for relief on this motion.

### The Second Claim for Relief

The theory of the second claim for relief is obscure. But plaintiff's memorandum in opposition to the motion makes clear that it seeks relief on the theory that CCA acted with apparent authority conferred by Red Bull "and that plaintiff reasonably relied on [CCA's] acts and representations." Thus, two possible bases for relief must be considered: that Red Bull is liable for CCA's (1) breach of the exclusivity provision of plaintiff's contract with CCA, and (2) misrepresentation as to the exclusive nature of its Manhattan relationship with plaintiff. Neither, however, is sufficient. Indeed, while there are other problems with the claim, both founder on one

---

[1] The agreement provided also that CCA would provide plaintiff with cans of Red Bull drink at a price not to exceed $1.25.

3

common point.

The pivotal communication between plaintiff and Red Bull – that in which "Lawrence" allegedly told plaintiff that CCA had acquired the right to sell the vending machines and distribution rights and that plaintiff had to buy the machines and product from CCA – occurred almost a year after plaintiff sign its contract with CCA. The only alleged communication prior to the signing of that contract was the statement that Red Bull was working with several third party companies, including CCA, "to broker the sales of the branded vending machines to the public." Indeed, plaintiff does not even allege that Red Bull then told it that it had reached any understanding with CCA. In consequence, no reasonable trier of fact could find that the statement, even if made, was sufficient to confer apparent authority on CCA to enter into an exclusive distributorship with plaintiff or to make representations to plaintiff about the Red Bull business. *See, e.g., Standard Funding Corp. v. Lewitt*, 89 N.Y.2d 546, 551 (1997) (putative principal must have said words or engaged in conduct that gave appearance that alleged agent had authority to act in the manner relied upon by plaintiff).

*Third Claim for Relief*

The third claim for relief explicitly presupposes that CCA acted as Red Bull's agent in granting exclusive rights to plaintiff for Manhattan and goes on to claim that Red Bull tortiously caused the breach of that contract by allowing others to sell in Manhattan. The problems with this claim are numerous, including among others the following:

- Red Bull clearly did not grant actual authority to CCA, as its contract expressly negated any such relationship. For the reasons set out above, plaintiff has not alleged facts from which apparent authority reasonably could be inferred. The fundamental premise of the claim therefore is baseless.

- Even if that were not so, plaintiff's contract with CCA is hopelessly vague as to the meaning of the exclusivity provision, a matter that is fatal regardless of how the uncertainty is resolved. If the contract were construed as a limitation only on CCA's right to sell to others in Manhattan, then Red Bull's action in permitting entities other than CCA to sell in Manhattan neither breached nor interfered with plaintiff's rights under its contract with CCA. If, on the other hand, that contract were construed as purporting to limit the rights of Red Bull and others, it was not valid in light of the express non-exclusivity provision of the CCA-Red Bull agreement. There can be no liability for tortious interference with an invalid contract. *See, e.g., Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120 (1956).

4

*Conclusion*

      Plaintiff, even on its own telling of the tale, is responsible for its own predicament. It is difficult to imagine how it entered into a $150,000 transaction in reliance on an assurance that it would have exclusive rights to Manhattan without either (a) spelling out what that meant – i.e., whether it meant that CCA alone would be precluded to selling to others in Manhattan or instead that CCA, Red Bull and anyone else in the chain of distribution would be so limited, or (b) engaging in basic due diligence to ensure that it got what it thought it was paying for. More important, for present purposes, is that this amended complaint alleges no facts that could possibly give rise to liability on the part of Red Bull.

      Red Bull's motion to dismiss the amended complaint as to it [DI 22] is granted in all respects. As more than 120 days have passed since the commencement of the action and no proof of service on CCA has been filed, the action is dismissed as to CCA without prejudice as to that defendant pursuant to Fed. R. Civ. P. 4(m).[2] The Clerk shall enter final judgment and close the case.

      SO ORDERED.

Dated:    March 3, 2008

                                 Lewis A. Kaplan
                           United States District Judge

---

[2]   The notice of removal is deemed amended to allege that CCA never was served, therefore making removal appropriate. *See* 28 U.S.C. § 1653.